# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA

---

## Kelley *v*. The Pittsburgh Casualty Company, Appellant.

*Insurance—Accident insurance—Accidents — Previous illness—Injuries—Cause—Case for jury.*

1. Where, in an action on an accident insurance policy insuring "against loss or disability resulting directly, independently and exclusively of all other causes, from bodily injuries effected solely through accidental means," it appeared that plaintiff had twisted his body while endeavoring to avoid a fall on icy ground, thereby straining or tearing his intestines at a point where they adhered to the wall of the abdominal cavity so that an operation was rendered necessary, it was for the jury to determine whether plaintiff's disability was caused by the accident where there was medical testimony that but for the accident plaintiff would not have been inconvenienced by the adhesions, and a verdict and judgment for plaintiff were sustained.

2. If the devise be but a condition and the accident the moving, sole and proximate cause of the injury, the insurance company will be liable.

Argued Oct. 3, 1916. Appeal, No. 85, Oct. T., 1916, by The Pittsburgh Casualty Company, from judgment of C. P. Washington Co., May T., 1914, No. 190, on verdict for plaintiff, in case of Eugene A. Kelley v. The Pittsburgh Casualty Company, a Corporation, James B. Haines, Jr., Thomas P. Jones and Lewis C. Sands, Trustees. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Assumpsit on a policy of accident insurance.

McILVAINE, P. J., filed the following opinion, sur defendant's motion for judgment n. o. v.:

This was a suit on an accident insurance policy. The indemnity provided for in the policy was "against loss or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means—suicide while sane or insane or any attempt thereat is not covered—as provided in the following sections:

"Section 1.

"If any of the losses stated in the following Schedule result directly and independently of all other causes and within four years from date of accident from bodily injury as above defined, while this policy is in force, the Company will pay the sum set opposite such loss......

"Section 2.  Loss of time from bodily injury.

"For Total Loss of Time—
  "The Weekly Indemnity stated
   in the Schedule of Warranties,
  { Limit Four Years }

"For Partial Loss of Time—
  "One-half said Weekly Indemnity,
  { Limit Four Years }

Limit Four Years

"For Total Loss of Time (Beyond Four Years),
  "One-fourth said Weekly Indemnity,
  { From said limit to age 70 or previous death."

"Total disability, $25.00 per week; partial disability, $12.50 per week."

There is no clause in the policy either limiting or negativing the liability to any person for indemnity or benefits for injuries in case such injuries shall occur as the result wholly or partially, directly or indirectly, of any

disease, bodily or mental infirmity, other than above quoted.

The question for decision in this motion is this—does the evidence introduced in this case show, or is it sufficient to sustain the finding of the jury, that the plaintiff, Eugene A. Kelley, "sustained loss or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means?"

At the trial the defendant requested the court to charge as follows:

"Under all the evidence your verdict must be for the defendant."

The court refused this request and held that the question under the testimony was one which should be decided by the jury under the instructions which the court gave them. The defendant's counsel maintain that the court erred in refusing- this point and that that error should now be corrected by the court entering judgment notwithstanding the verdict of the jury in favor of the plaintiff.

There is no serious dispute that on December 2, 1910, the plaintiff slipped in walking on steep and icy ground and almost fell, that in righting himself he twisted his body in the region of the abdomen, and that a few hours after this twisting of his body he suffered severe pain in his abdomen. On December 5th an operation was performed and it was discovered that there were adhesions of his, bowels to the wall· of the abdominal cavity and at the point of adhesion inflammation had set in, so that pus was about to be formed; and it further appeared in the testimony that the plaintiff was disabled for a number of months after this operation was performed. Three physicians who participated in the operation testified to these adhesions of the bowels to the wall of the abdominal cavity, and also testified that in their opinion the inflammation which they discovered and the pus that was about to be formed were the result of a tearing or strain-

ing of the tissues at the point where the bowels adhered
to the wall of the abdominal cavity, and that the disabil-
ity which the plaintiff underwent was the result of the
twisting of his body in the region of the abdomen when
he accidentally slipped and almost fell.   The plaintiff
from the first of November until the second of December
had been in good health, had been attending to his duties
as secretary of the Beaver Refining Company, and it was
the opinion of the physicians that the adhesions of the
bowels to the wall of the abdominal cavity were of such
a character, as they discovered them, as not to have given
the plaintiff any inconvenience in the performance of his
work had not there been a tearing or stretching of the
tissues at the point of adhesion when he accidentally
slipped, and that the necessity for the operation that
they performed and the consequent disability of the
plaintiff resulted directly, independently and exclusively
of all other causes, from the accidental slip and the
wrenching of his body.

The defendant in this case set up first that the plain-
tiff some months before December 2, 1910, had had an
operation for appendicitis, and that he was afflicted, at
the time he was convalescent from that first operation,
with phlebitis, and that the inflamed condition which the
plaintiff's physicians discovered at the time of the opera-
tion of December 5th was the result, at least in part, of
the previous operation and the conditions which were
brought about by and following that first operation.   The
question was left to the determination of the jury, the
court impressing upon the jury its opinion that the
plaintiff could not recover unless the testimony showed
to their satisfaction that the slipping of the plaintiff as
described by him was the sole, efficient cause of the plain-
tiff's disability.

The defendant's counsel at the argument of this mo-
tion contended that, under the contract of insurance in
this case, the doctrine of remote and proximate cause,
the doctrine of active and passive cause, or the doctrine

of efficient and proximate cause, have no application in this case, and that this court should have instructed the jury to find for the defendant because of the fact that the evidence showed that the plaintiff had an adhesion of the bowels to the wall of the abdominal cavity on December 2, 1910, and that this accidental injury would not and could not have been sustained had he been free from bowel adhesions and a normal man.   Or in other words, they claim that the adhesion of the bowels to the wall of the abdominal cavity was a cause which contributed to the injury which the plaintiff sustained and that therefore he can not recover.

In this contention we think the defendant errs.   It may be admitted—indeed it must be admitted in this case—that the plaintiff had adhesions of the bowels to the wall of the abdominal cavity; and it may be admitted, and I think must be under the testimony even of the plaintiff's physicians, that if those adhesions had not existed the accident to the plaintiff would not have had any serious results; or in other words, that the strain would not have had a point in his anatomy on which to operate, as the bowels would have been free to move and there would have been no point of strain or consequent inflammation.   We think the defendant's counsel confound this case with a class of cases in which the policy provides that there shall be no liability to any person for injuries where such injuries result wholly or partially from disease or bodily infirmity.   In the case at bar the only exception that is made is in these words: "Suicide while sane or insane or any attempt thereat is not covered by this policy."   But we have discovered no clause in the policy limiting liability on account of disease or bodily infirmities of the insured; or, in other words, this policy does not limit the recovery of indemnity for injuries accidentally sustained, solely to those who are bodily sound and truly normal men in the sense that they have no bodily defects.   We held at the trial, and think properly, that if the adhesions of

the bowels to the abdominal wall were of such a char-
acter that they did not inconvenience the plaintiff in the
performance of his daily tasks, and they were what we
might call healthy adhesions, such as might have con-
tinued to exist for years without even the knowledge of
the plaintiff and without any inconvenience to him and
without in any way disabling him from performing his
daily tasks, and that the inflammation and condition
found by the physicians when his body was opened was
the direct result of the straining and no other cause con-
tributed to that inflammation and condition they found,
other than the straining or stretching of the tissue—then
the plaintiff was entitled to recover; and the jury have
found and the testimony of the physicians justified that
finding, that the straining which resulted from the acci-
dental slip was the sole and efficient cause of the plain-
tiff's injury and his consequent disability.

Our position at the trial may be well defined, substi-
tuting the word "disability" for the word "death," by an
extract from 5 Am. & Eng. Anno. Cases, pages 86 and 87,
which is as follows:

"If disease, while existing, be but a condition and the
accident the moving, sole and proximate cause of the
death, the exception in the policy will not relieve the in-
surer for death so caused. Thus it has been said that
if an insured should suffer death by drowning, no matter
what the cause of his falling into the water, whether
disease or slipping, the drowning in such case would be
the proximate and sole cause of the death, unless it ap-
peared that death would have been the result, even had
there been no water at hand. So, it seems, death due to
chronic alcoholism and a broken limb is not within the
exception, if the proximate cause of death is the accident
and resulting injury. Death due to a fall caused by a
sudden ailment or disorder is not the result of disease
within the meaning of an exception in a policy, the fall
being the sole and proximate cause of death. The same

is true in case of death caused by a fall rupturing an artery weakened by a tumor."

In Fidelity & Casualty Company v. Meyer, reported in 44 L. R. A. (N. S.) 493, the insurance company undertook to insure "against bodily injuries sustained through accidental means, resulting directly, independently, and exclusively of all other causes in death." The Supreme Court of Arkansas held that the excitation by an accident of a dormant growth or formation in the body so that it rapidly resulted in death, which, but for the accident, would have been deferred until a later period in life, is within the operation of a policy insuring against bodily injury sustained through accidental means, resulting directly, independently and exclusively of all other causes in death. We quote in part from the opinion of the Chief Justice, page 497:

"The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.......Where accidental injury aggravated a disease, and thereby hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death at that time....... The phrase 'resulting directly, independently, and exclusively in death,' refers to the efficient, or, as some courts speak of it, the predominant cause of death at the time it occurs. In other words, it means the proximate cause.......It must be remembered that the policy is couched in language, chosen by the insurer, and must be given the construction, of which it is susceptible, most favorable to the assured.......Moreover, it is the duty of courts to give such construction to a policy, if the language used fairly admits, as will make it of some sub-

stantial value and carry out the intention expressed therein that liability is incurred where death occurs from accidental injury. If liability is to depend upon the physical condition of the assured as contributing in some degree to death, then it should be so stated plainly in the policy. We are of the opinion that the language of this policy does not mean that there shall be no liability in case death results from the aggravation of a preexisting disease."

The principle enunciated in this opinion we endeavored to impress upon the jury, and to illustrate the working of that principle we instanced a person who had lost his sight by an accidental injury to the eye, that eye being previously in a weakened condition by the presence of a cancerous growth, and said to the jury that it was a question of fact for the jury to determine, whether the physical injury to the eye was the sole and efficient cause of the destruction of sight, and if it was, then the presence of the cancer in the eye, although it might have weakened the eye, would not defeat a recovery; while on the other hand, if the character of the cancer was such that it would have destroyed the eye certainly, and that that cause with the physical injury acting concurrently destroyed the eye, that then the plaintiff could not recover. In short, it was our opinion in the case at bar that if the bowel adhesions in the body of the plaintiff were what could be properly called healthy adhesions, such adhesions as gave no inconvenience and in no way disabled him from performing his daily tasks, then an accidental injury to those adhesions would be within the meaning of this policy, if from the testimony it was apparent that those adhesions did not and probably never would give the plaintiff any trouble such as would disable him from doing his work, had there been no accidental injury. The plaintiff's testimony also showed that these adhesions were of such a character that they did not in any way interfere with the passage of the fecal matter through the bowels, and that probably, had this

accidental straining and tearing of the adhesions not happened, they would never have given the plaintiff any trouble; and the jury having found these facts, we think that the verdict of the jury should not be disturbed.

Verdict for plaintiff for $3,650 and judgment thereon. The Pittsburgh Casualty Company appealed.

*Errors assigned* were instructions to the jury, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*W. R. Murphy,* with him *James A. Wakefield, McIlvain, Murphy, Day & Witherspoon* and *J. B. Boyer,* for appellant.

*T. Jeff Duncan,* with him *Duncan, Chalfant & Warne, O. S. Chalfant, Boyd E. Warne, Acheson & Crumrine, C. L. V. Acheson* and *J. Boyd Crumrine,* for appellee.

PER CURIAM, January 8, 1917:

The judgment is affirmed on the opinion of the learned court below overruling the motion for judgment for defendant non obstante veredicto.

---

# Hazelwood Brewing Company *v.* Siebert, Appellant.

*Corporations—Contracts—Negotiable instruments — Promissory notes—Accommodation endorsement—Ultra vires—Defenses.*

1. While the validity of an act ultra vires of a corporation may be questioned by stockholders, the state, and in some instances by creditors, it cannot be questioned by a stranger to the transaction.

2. Where a brewing company became an accommodation endorser of a promissory note, and having paid the note sought to require payment of a prior endorser, the defense that plaintiff's action in endorsing the note was ultra vires, that payment by plaintiff could not have been compelled, and that for that reason it had no right