## Stauffer *v.* Hubley Manufacturing Company et al., Appellants.

Argued November 9, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Paul A. Mueller,* with him *Ralph M. Barley* and *S. H. Torchia,* for appellants.

*W. Hensel Brown,* with him *A. H. Young,* for appellee.

OPINION BY KENWORTHEY, J., January 28, 1943:

This is a claim for workmen's compensation, (1) for total disability, and (2) for death, alleged to have been caused by silicosis, filed under the Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566. The provisions of this Act differ from those of the prior Act of July 2, 1937, P. L. 2714—which it repealed—as respects, inter alia, disability or death caused by silicosis, anthraco-silicosis or asbestosis.

The Act of 1937 provided in section 4(b): "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis. Compensation shall be payable, as otherwise provided in this act, for total disability or death caused primarily (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis, or by silicosis, anthraco-silicosis, or asbestosis, when accompanied by active pulmonary tuberculosis or streptococcic infection of the lung ......"

The corresponding provision in the Act of 1939, (sec. 301(e)), reads as follows: "Compensation shall not be payable for partial disability due to silicosis, anthraco-silicosis, or asbestosis. Compensation shall be payable, as otherwise provided in this act, for total disability or death caused *solely* (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis, or by silicosis, anthraco-silicosis, or asbestosis, when accompanied by active pulmonary tuberculosis." (Italics supplied).

It will be noted that under the Act of 1939, payment of compensation for the occupational disease, silicosis, is limited to *total* disability or death caused *solely* by silicosis or by silicosis when accompanied by active pulmonary tuberculosis; while under the Act of 1937, compensation was payable for *total* disability or death caused *primarily* by silicosis or by silicosis when accompanied by active pulmonary tuberculosis or *streptococcic infection of the lung*. Under both acts compensation would not be payable at all for partial disability, or for total disability or death where silicosis was only a contributory or accelerating cause.

Both acts show a clear intention to differentiate silicosis, anthraco-silicosis, and asbestosis from the other occupational diseases included within their provisions.

Counsel for claimant at the hearing before the referee apparently proceeded on the theory that the claim was being made under the Act of 1937, for the questions asked the medical witnesses for the claimant indicate an attempt to show that silicosis was the *primary* cause of the employee's death.

It is true that both medical witnesses who were called by the claimant testified that the silicosis, from which Howard R. Stauffer, the claimant's husband, suffered, although not the immediate cause, was the primary cause of his death. But a reading of their testimony shows that they did not understand what was meant by the phrase "total disability or death caused *primarily*—as distinguished from a contributory or accelerating cause—by silicosis," as used in the Act of 1937.

Dr. Thelma G. Boughton, assistant pathologist at the Lancaster General Hospital, testified: "The *primary* cause of death is the *underlying* cause; the *complicating* causes are the *immediate* causes of death; our death certificates are all made out that way." (Italics supplied).

She was evidently referring to the certificates of death required to be furnished to the Department of Health under the Act of June 7, 1915, P. L. 900, and its amendment of May 24, 1933, P. L. 976,[1] which in section 7 prescribed that the certificate of death should contain, inter alia, the following information:

"(17) Cause of death, including the primary and immediate causes, and contributory causes or complications, if any, and duration of each."

The certificate prescribed by the Act of Assembly made a distinction between primary and immediate causes on the one hand and contributory causes or complications on the other.

By *primary* cause is meant the main, chief, principal or predominant cause of the death that had then occurred—not some serious disease which would probably have caused the patient's death in the future, but was not the principal cause of his death at that time.

By *immediate* cause is meant the direct, present, instant or proximate cause of the death that had taken place; that which produced the result without any intervening agency.

In many cases,—perhaps in the majority of cases—the primary cause and the immediate cause are the same. Webster's New International Dictionary gives them as synonymous. In such event any other cause or disease which contributed to or accelerated the death was a secondary, contributing or complicating cause of death.

Where the primary cause and the immediate cause are not the same, in order to be the *primary* cause of the death it must have produced or brought about the *immediate* cause which resulted in the death.

This can best be shown by concrete examples:

---

[1] Before the amendment of April 22, 1937, P. L. 399, which authorized the Department of Health to prescribe the form of the certificate.

If a diabetic man is severely crushed about his chest in an accident, and traumatic pneumonia sets in resulting in his death from pneumonia, the immediate cause of death was the traumatic pneumonia; the primary cause of death was the crushing of the chest, which produced or brought about traumatic pneumonia, the immediate cause of death; and diabetes may have been a contributory, secondary or complicating cause of death.

On the other hand, if a man suffered an accident which merely lowered his vitality or powers of resistance, and in his weakened condition he fell a victim to a germ disease which was not produced or brought about by his accident, the *primary and immediate* cause of his death was the germ disease and his accident was a "passive ally," or at the most, only a contributory, secondary or accelerating cause of death.

With these preliminary observations, we can now better consider the facts in this case, which are not in serious dispute.

Howard R. Stauffer had worked as a moulder for Hubley Manufacturing Company for about twenty-five years. His occupation exposed him to the hazard of silicosis; but he had worked there practically continuously since 1919, when he came home from military service in this country. About three years before his death on March 17, 1941, he consulted Dr. H. R. Bryson, who diagnosed his trouble as acute bronchitis, but about two years before his death became convinced that Stauffer had silicosis and advised him to change his occupation. He was not disabled or laid off because of silicosis, but on January 25, 1941 was unable to work because of what was afterwards diagnosed as streptothricosis, a rare, branching fungus type of infection, which resulted in an abdominal abscess. He was treated at his home for three weeks and was then taken to the Lancaster General Hospital, where the abscess in the

upper part of his abdomen was operated on by Dr. Pontius, who reported to Dr. Bryson that "he thought it was metastasis,[2] carried from the lung." He stayed in the hospital until his death on March 17, 1941. Dr. Boughton performed an autopsy and found in the decedent's lung the same positive organism, streptothrix, which had caused the abscess in the abdominal wall. At first she thought there was evidence of tuberculosis, but when she examined the microscopic sections, she realized the infection was the streptothricosis and not the tuberculosis, which it resembled grossly, but which is easily distinguishable microscopically.

Now the medical testimony is clear and undisputed that the patient died of the streptothricial infection; that this infection was not caused by or brought about by the silicosis from which he was suffering in a serious stage, except that the silicosis lowered his resistance, "so that when he did develop the subsequent infection he had no resistance for it" (Dr. Boughton, p. 17a); that "had this man not had silicosis his vitality or resistance to this germ (streptothrix) would have been greater" (p. 18a). Dr. Bryson confirmed Dr. Boughton's testimony as to the streptothricosis germs being the immediate cause of death, and also agreed that "These germs have no connection with silicosis as such, they are not silicosis germs—silicosis is simply a deposit of silica and there are no germs in silica—and the only effect silicosis had was to lower this man's vitality, to lower his resistance." (p. 27a).

It is well established in our workmen's compensation law that an accident, or an infection that results from it, which merely lowers the injured employee's vitality and resistance to germ diseases, rendering him more

---

[2] "Metastasis (Med.) The transfer by lymphatic channels or blood vessels, of diseased tissue (especially cells of malignant tumors) from one part of the body to another," Chamber's Technical Dictionary.

susceptible to them and less able to combat the disease, is not compensable as respects disability or death resulting from a germ disease or infection not directly caused by the accident: *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358; *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 24 A. (2d) 51, and cases cited on p. 334 of 147 Pa. Superior Ct. Reports and p. 54 of 24 A. (2d) Reports. While on the other hand an *accident* which *aggravates or accelerates* an existing ailment or condition so as to result in the employee's disability ordinarily is compensable: *Zionek v. Glen Alden Coal Co.,* 105 Pa. Superior Ct. 189, 193, 160 A. 154; *Bird v. Brown,* 148 Pa. Superior Ct. 534, 539, 25 A. (2d) 857; *Flock v. Pittsburgh Term. Coal Corp.,* 140 Pa. Superior Ct. 232, 235, 13 A. (2d) 881.

The Occupational Disease Compensation Acts are even more limited than the Workmen's Compensation Acts as respects disability or death resulting from silicosis, for both the Act of 1937 and the Act of 1939 agree in the provision that in order to be compensable the total disability or death must be *caused* "primarily",[3] or "solely"[4]—"as definitely distinguished from a contributory or accelerating cause"—by silicosis.

It is clear, therefore, that neither under the Act of 1937 nor the Act of 1939 could there be an award of compensation for total disability or death because of silicosis, where the only connection between the employee's silicosis and his total disability or death was that it lowered his vitality and powers of resistance and left him more susceptible, and less able to combat, the germ disease which was the cause of his disability and death.

That is this case; for while Dr. Boughton and Dr. Bryson testified that silicosis was the *primary* cause of Stauffer's death, further examination revealed their

---

[3] Act of 1937, P. L. 2714.
[4] Act of 1939, P. L. 566.

misconception of what 'primary cause' meant as used in the Workmen's Occupational Disease Compensation acts, and as distinguished from 'immediate cause', which both erroneously said referred to 'complications.'

They both testified definitely and positively that the silicosis from which Stauffer was suffering, in a serious stage, had not caused or produced or brought about the streptothricial infection which caused his death, or had any effect as respects such infection other than to lower his vitality and weaken his resistance to it.

Thus understood and limited there is in the record no competent testimony to support the referee's fifth and sixth findings of fact, approved by the board, on which the award in this case rested, and from which the board determined that silicosis was the primary cause of Stauffer's death.

Our discussion of the case, up to this point, has been, for the most part, along the lines adopted by counsel for claimant in presenting her case and followed by the referee and the board in. determining the issues involved, viz., that the claimant was entitled to an award of compensation if. it was found from the competent medical testimony in the record that her husband's death was caused *primarily* by silicosis, which was the test laid down by the Act of 1937, modified by the provision that the primary cause (silicosis) must be definitely distinguished from a contributory or accelerating cause.

But as pointed out at the start of this opinion, that is not the test of liability in this case. The Act of 1939, which governs, is more restrictive than the Act of 1937. No liability attaches under the Act in force when the claimant's husband's disability began, or death occurred, if there was no prior disability because of silicosis,—which is the criterion, *McIntyre v. Lavino*, 344 Pa. 163, 165-6, 25 A. (2d) 163—unless the total disability or death was caused *solely* by silicosis

or by silicosis when accompanied by active pulmonary tuberculosis. The elimination of 'streptococcic infection of the lung,' as an accompanying cause with silicosis, from the Act of 1939, is still more restrictive.

The testimony of Dr. Boughton definitely eliminated 'active pulmonary tuberculosis' as an accompanying cause of death with silicosis in this case; so the question of liability narrows down to whether Stauffer's death was caused *solely*—as definitely distinguished from a contributory or accelerating cause—by silicosis.

The word 'solely' has come before our courts for construction in accident insurance policies which provide for payment of indemnity for death resulting from bodily injuries caused *solely* by accidental means, or similar clauses.[5] And both the Supreme Court and this Court have held that, to justify recovery on such a policy, the plaintiff must furnish evidence that the accidental injury was the sole cause of the death; that it is not enough to prove that the accident set in motion forces, not accidental but the natural effects of existing disease, which ultimately caused the insured's death. If other causes, not accidental, but the natural effects of disease, brought about his death, the policy gave no right of recovery, even though the accident may have contributed in some degree to the result. See *Lucas v. Metropolitan Life Ins. Co.*, 339 Pa. 277, 14 A. (2d) 85; *Real Estate Trust Co., Trustee v. Metropolitan Life Ins. Co.*, 340 Pa. 533, 17 A. (2d) 416; *Foulkrod v. Standard Acc. Ins. Co.*, 343 Pa. 505, 510, 23 A. (2d) 430; *Roeper v. Monarch Life Ins. Co.*, 138 Pa. Superior Ct. 283, 287,

---

[5] To be distinguished, in some degree, from policies which contain an additional limitation, such as: "This indemnity shall not be payable if the death of the insured results directly or indirectly from disease or from bodily or mental infirmity." See *Real Estate Trust Co., Trustee v. Metropolitan Life Ins. Co.*, 340 Pa. 533, 17 A. (2d) 416; *Kelly v. Prudential Ins. Co.*, 334 Pa. 143, 6 A. (2d) 55; *Kelley v. Pittsburgh Casualty Co.*, 256 Pa. 1, 100 A. 494; *Foulkrod v. Standard Acc. Ins. Co.*, 343 Pa. 505, 23 A. (2d) 430.

11 A. (2d) 184, and cases therein cited. The correlative of this principle was stated in *Kelley v. Pittsburgh Casualty Co.*, 256 Pa. 1, 7, 100 A. 494, where the policy insured "against loss or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental means." The Supreme Court affirmed the judgment of the court below, on the opinion of McILVAINE, P. J., which contained the following: "The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, *disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.*" (Italics supplied).

We are not here called upon to lay down general rules which will govern all cases that may arise under section 301(e) of the Occupational Disease Compensation Act of 1939. In fact it would be a mistake to attempt it. It is better to decide the cases as they arise on their own facts. It is only necessary for us to hold that in the case under review the claimant's own medical testimony clearly established that the infection which caused Stauffer's death was not produced or brought about by silicosis; that the latter (silicosis) had no effect whatever on the infection which caused his death other than to lower his vitality and weaken his power of resistance to it. Therefore his death cannot be said to have been caused *solely* by silicosis. If the silicosis was anything but a 'passive ally' of the agencies set in motion by the streptothricial infection, of which he died, it was at most only a "contributory or accelerating cause," which is definitely ruled out as a compensable cause by the express language of the section above quoted.

The thought comes that the conclusion we find it necessary to reach falls with heavy impact upon this unfortunate claimant; that her deceased husband, had he not been fortuitously carried off by streptothricosis, would inevitably have died solely from silicosis. But one's sympathies would be equally stirred if he had been killed in an automobile accident. Our duty is to construe and apply the law as we find it.

The judgment of the court below, affirming the award of the board, is reversed and judgment is entered for the defendants—the employer and its insurance carrier and the Commonwealth of Pennsylvania, intervening appellant.