Treaster, Appellant, v. North American Refractories Company et al.

Argued October 24, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*H. J. Culbertson,* with him *Culbertson & Culbertson,* for appellants.

*I. Newton Taylor,* for appellees.

OPINION BY RENO, J., January 25, 1945:

In this workmen's compensation case the board set aside the referee's findings, substituted its own findings, and awarded claimant compensation for the death of her husband from silicosis under the Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §§1201 et seq. The court below sustained exceptions to the board's decision, and entered judgment for defendants. The widow appealed.

The single question for decision is whether the record presents sufficient competent evidence to sustain the finding of the board, in view of Section 301(e) of the Act, 77 PS §1401(e), which provides: "...... Compen-

sation shall be payable, as otherwise provided in this act, for total disability or death caused solely (as definitely distinguished from a contributory or accelerating cause) by silicosis, ......"

The decedent worked as a repairman and later as a pan oiler in the silica brick plant of defendant North American Refractories Company and its predecessors at Mt. Union from 1916 until February 23, 1940, when he was laid off. From the testimony of appellant and some of deceased's fellow workers, it appears that decedent was repeatedly exposed to large quantities of silica dust during the course of his duties, and that about a year before he was laid off he developed a marked cough and a shortness of breath which greatly interfered with his activities and which gradually increased in severity with the passage of time. Deceased was totally incapacitated for work after March 15, 1940, and he died on the morning of October 19, 1941, after a severe coughing spell which caused him to spend the preceding night sitting up in a chair.

Dr. J. S. Herkness, who qualified as a general practitioner, testified for appellant that he had treated decedent professionally on eight occasions between March 1, 1941, and October 6, 1941. Upon his first examination, Dr. Herkness found that deceased, who was 59 years of age at the time, had valvular heart disease accompanied by a pulse rate of 110 and a blood pressure of 180. The doctor also discovered a concentration of fine rales in decedent's lungs, and directed an x-ray examination. While deceased was under his care, his pulse rate declined to 84, but the shortness of breath and cough became steadily worse, and the witness diagnosed decedent's lung condition as silicosis in the second stage. Concerning the cause of death, the doctor testified: "I think he died of silicosis, but he had this complication, valvular heart disease. ...... Q. And in your professional opinion Mr. Treaster died of silicosis? A. Yes, I

think he had silicosis. As I said before, his heart condition steadily improved, his pulse rate when I started treating him was 110 and the last time I saw him the rate had come down to 84." The day after decedent's death, Dr. Herkness completed a death certificate on which he assigned pulmonary silicosis as the "immediate cause of death." In the space provided for "other conditions" valvular heart disease was inserted.

Dr. O. M. Weaver, radiologist at the Lewistown Hospital, testified that decedent had been radiographed there on April 15, 1941, and that the x-ray showed a third stage silicosis and cardiac enlargement, but that he was not sufficiently familiar with decedent's clinical history to express an opinion on the cause of death.

Dr. J. C. Stambaugh, chief of the State clinic at Lewistown, examined decedent on March 25, 1941, and again on April 29, 1941, at the suggestion of Dr. Herkness, and diagnosed his condition as an advanced stage of silicosis accompanied by hypertrophy of the heart, which he thought had been occasioned by the increased burden put upon the heart by the lung fibrosis caused by silicosis. This witness could give no opinion on the cause of decedent's death other than that he probably died of a heart condition that was secondary to silicosis.

Dr. Charles Reiners, a general practitioner in charge of the pathologic laboratory at Huntingdon Hospital, performed an autopsy on decedent's body on April 22, 1942. The post-mortem examination revealed closely spaced, black, rubbery nodules throughout the lungs and a considerable enlargement of the heart of long standing, but no coronary embolism was found. The doctor was of the opinion that the lung condition, diagnosed as third stage silicosis, would place a strain upon the heart because of difficulties in breathing resultant upon the lung fibrosis. When asked for an opinion on the cause of decedent's death, Dr. Reiner testified: "I don't think there is any question but that he died a cardiac

death; I feel, and it is my opinion, that this was a damaged heart, but the man had gone along, I think he was fifty-four or fifty-five, around there, apparently able to do his work until this added encumbrance of the lungs threw an additional strain on it, which was too much for it." Later this witness testified: "...... It was my opinion that in view of the fact that the man had lived with a chronic aortic valvular disease, which was proved by the examination at the autopsy, for fifty-two or fifty-four years that the death was undoubtedly caused by the extra strain thrown on the heart by the silicosis. ...... it is my opinion that the death was, you might say, superinduced by silicosis, that I don't believe he would have died at that time if this had not occurred." And further, he stated: "Q. Would under normal care, without this silicosis condition, Fred Treaster have died at the time he did? A. It is my opinion that this death was brought on by the added strain, the same reason I gave before, from silicosis."

If this medical testimony, produced by claimant, was sufficient to support the board's finding of fact that decedent's death was caused solely by silicosis, the judgment must be reversed, as the compensation authorities are the appointed agency to resolve disputed factual questions from conflicting evidence and the opinions of defendants' experts, which need not be here reviewed, cannot now be weighed de novo. *Smith v. Wm. Hodges & Co.*, 151 Pa. Superior Ct. 14, 28 A. 2d 719.

The question is whether proof of decedent's heart ailment, which all his medical witnesses conceded to be incurable, without more, deprives his widow of compensation for his death. To justify an award for death from silicosis under the Act, must the employee have been entirely free of physical infirmities save the fatal silicosis in order for that disease to be the sole cause of death within the meaning of the Act? Obviously, this could not have been the purpose of the legislature in enacting the statute, for then there would be few, if any, indus-

trial workers who could qualify physically for the benefits created. The courts may presume that such an unreasonable result was not intended, particularly as the Occupational Disease Act is to be liberally construed with a view toward effectuating its humanitarian objectives. *Staller v. Staller,* 144 Pa. Superior Ct. 83, 18 A. 2d 537, affirmed, per curiam, 343 Pa. 86, 21 A. 2d 16. Statutory Construction Act of May 28, 1937, P. L. 1019, §52(1), 46 PS §552(1). If the silicosis with which the employee was afflicted was the sole cause of his death, under a proper definition of that term, the mere concurrent existence of independent physical weaknesses is insufficient to tip the scales in his employer's favor.

This Court in *Stauffer v. Hubley Mfg. Co.,* 151 Pa. Superior Ct. 322, 331, 30 A. 2d 370, discussed the meaning of the requirement in the Act that death be "caused solely (as definitely distinguished from a contributory or accelerating cause) by silicosis," and we there quoted from an opinion adopted by the Supreme Court in *Kelley v. Pittsburgh Casualty Co.,* 256 Pa. 1, 7, 100 A. 494, as follows: "The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." A silicotic condition that merely contributes to death along with other cooperating infirmities, or which simply serves to aggravate a pre-existing disease or state of physical weakness into fatal consequences would not be sufficient to sustain an award under the Act; but where the silicosis is itself the active agency which terminates the life, there is compliance with the statute, notwithstanding the victim displayed disorders unconnected with the occupational disease which might in themselves have

produced death had they been allowed to traverse their expected course. In the latter event, the disease or weakness is a passive factor without effect in depriving the silicosis of its character as the sole producing cause of death.

In the present case the testimony of claimant's medical witnesses assigns the active role in causing decedent's death to the spasms of coughing and gasping for breath brought on by the advanced stage of silicosis to which he had progressed. The rigors of the struggle proved too great, and the damaged heart surrendered, but the death occurred when it did, not because of the deficiencies of the heart, but because of the paroxysms induced by the disease contracted by decedent in his employment. Under the circumstances the finding of the board was not error, for testimony adduced by claimant, if credited, established silicosis as the sole cause of decedent's death.

The judgment is reversed, and the record is remitted to the court below with directions to enter judgment on the award of the board.