Scariato *v.* No. 9 Coal Company, Appellant.

Argued March 1, 1954; reargued March 26, 1954. Before HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

**2**

 

*E. Mac Troutman,* with him *Penrose Hertzler,* for appellant.

*Thomas B. Noonan,* with him *Thomas L. Kennedy, Jr.,* for appellee.

OPINION BY HIRT, J., July 13, 1954:

Plaintiff claimed compensation for the death of her husband under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, then in effect. Her husband Ross Scariato died on May 14, 1951. The claim was for death from anthraco-silicosis under §301(e) of the Act, which provided for compensation for "death caused solely (as definitely distinguished from a contributory or accelerating cause) by silicosis, anthraco-silicosis, or asbestosis" or "when accompanied by active pulmonary tuberculosis." It was admitted that the decedent had been employed in the anthracite mines of Pennsylvania for more than five years and that he had been exposed to a silica hazard within the Commonwealth for the period contemplated by the statute. He had been in defendant's employ for about a year. The claim was disallowed by both the Referee and the Board; the court on appeal, however, remitted the record to the Board "for further hearing, recon-

sideration and determination." The order will be reversed.

The Board disallowed the claim on this basic finding of the Referee which it affirmed: "The decedent died of far advanced active pulmonary tuberculosis. The silicosis in the early first stage which the decedent had, caused no disability and did not contribute to his death."

At the hearing before the Referee, Dr. A. R. Judd an eminent specialist in diseases of the chest was called by claimant. He testified that decedent was admitted to Hamburg Sanitarium of which Dr. Judd was Medical Director, on June 5, 1950 and was under his observation up to the date of death. From a physical examination, aided by a series of x-ray films he found that decedent ". . . had a degree of silicosis, and from the history it was judged to be anthraco-silicosis and active pulmonary tuberculosis of far advanced type." He found only "an early first degree silicosis" and couldn't estimate the degree of disability from that source because he hadn't seen ". . . the patient prior to the onset of the tuberculosis, and the course from the tubercular infection was exceedingly rapid." Dr. Judd gave it as his opinion that "pulmonary tuberculosis with anthraco-silicosis" was the cause of death. It is unfortunate that a post-mortem examination was not authorized as requested by Dr. Judd because he stated that without such examination he could not tell the extent of the anthraco-silicotic involvement.

Against the opinion of claimant's medical witness Dr. W. V. Dzurek, a Roentgenologist of wide experience in silicosis and tuberculosis cases, testified on behalf of the defendant. From a review of the x-ray examinations and the clinical studies made at the Hamburg Sanitarium he found: "The diagnosis is definitely established as a caseous tuberculosis of the lung field

with multiple cavities and only minimal silicosis." In his opinion ". . . the silicosis didn't play any contributing factor in Claimant's death." The testimony of Dr. Burgess Gordon, a specialist in diseases of the chest called by defendant, was to the same effect. From an examination of the x-ray films he found only ". . . minimal silicosis of the right lung." He found: ". . . tuberculosis involving chiefly the left lung." As to silicosis as a cause of death Dr. Gordon testified: "I don't believe it played any part whatsoever. He died from tuberculosis." Dr. W. R. Glenney a third medical expert of wide experience in silicosis cases was also called by defendant. From the x-ray films and the records at Hamburg Sanitarium he found ". . . that this man died from advanced bilateral pulmonary tuberculosis, and . . . that he had a minimal degree of anthraco-silicosis described as the early phase of stage one." In Dr. Glenney's opinion ". . . this man did not have a degree of anthraco-silicosis which in any way affected the course of his pulmonary tuberculosis nor in any way caused disability" hastening his death.

Of course the Pennsylvania Occupational Disease Act of 1939 called for a liberal construction in favor of this claimant (*Treaster v. N. Am. Refractories Co.*, 156 Pa. Superior Ct. 567, 41 A. 2d 53) especially in the inferences to be drawn from the evidence (*Roschak et ux. v. Vulcan Iron Works*, 157 Pa. Superior Ct. 227, 42 A. 2d 280) but we cannot decide the case in the light of the subsequent amendment of §301(e) by the Act of January 2, 1952, P. L. (1951-1952) 1811, 77 PS §1401. The weight of the medical testimony was for the Board, and the Board was not obliged to accept even uncontradicted testimony as true. *Walsh v. Penn Anth. Mining Co.*, 147 Pa. Superior Ct. 328, 24 A. 2d 51. Here the Board adopted the opinions of defendant's three medical witnesses to the effect that the silicosis

(characterized also by Dr. Judd as "early first degree") although accompanying pulmonary tuberculosis was not a cause, much less the sole cause of death.

Appellee stresses the importance of the following testimony of Dr. Judd on cross-examination: "Q. Doctor, I assume that the only effect of the silicosis would be to lower his vitality and his resistance to the tuberculosis? A. In general that's a good assumption because the silicotics are more likely to develop tuberculosis than the non-silicotic. Q. And that is your opinion? A. Yes. Q. So that the effect of the silicosis —the only effect was to lower his resistance and render him more susceptible to the tuberculosis? A. Lowered the susceptibility of the lung tissue, not of the general condition." It does not follow that the Board in refusing compensation is chargeable with a capricious disregard of the above testimony. *Cope v. Phila. Toilet, L. & S. Co.*, 167 Pa. Superior Ct. 205, 74 A. 2d 775. For even if accepted at face value this testimony would not change the result since the Board on sufficient competent evidence found that death resulted from "far advanced active pulmonary tuberculosis" and that the silicosis "did not contribute to his death."

There undoubtedly is a peculiar affinity between anthraco-silicosis and tuberculosis. It was on an assumption to that effect based on the above testimony that the lower court reversed the Board and remitted the record. But death is not caused solely by silicosis or anthraco-silicosis within the meaning of §301(e) of the 1939 Act when the only connection between the workman's silicosis and his death is that it lowered his vitality and power of resistance, and made him more susceptible to the active pulmonary tuberculosis which resulted in death. *Stauffer v. Hubley Mfg. Co. et al.*, 151 Pa. Superior Ct. 322, 30 A. 2d 370. Cf. *Walsh v.*

6

*Penn Anth. Mining Co.,* supra. Under such circumstances there must be other competent evidence accepted by the Board that the silicosis actually induced the tuberculosis in some degree, and together with it caused the death. There is no evidence in this case that the silicosis antedated the tuberculosis at its inception and claimant's medical testimony that it was "an early first degree silicosis" is some evidence that it did not. Under §301(e) death was not compensable where the silicosis was merely "a contributory or accelerating cause." To support an award under the 1939 Act there must be a finding based upon competent evidence that death was *caused* solely by silicosis or by silicosis when accompanied by active pulmonary tuberculosis. A finding in either alternative is wanting in this case.

Order reversed and judgment entered for the defendant on the disallowance of compensation by the Board.