McIntyre *v*. The Equitable Life Assurance Society of the United States, Appellant.

Argued October 2, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry Eastman Hackney,* with him *Karl W. Warm-castle* and *Reed, Smith, Shaw & McClay* for appellant.

*Con F. McGregor,* with him *Rose, Bechman & Dunn,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 23, 1936:

Defendant issued an insurance policy of the face value of $3,000 covering the life of William Charles McIntyre. Plaintiff, the wife of insured and the beneficiary named in the policy, sued in assumpsit to recover an additional $3,000 under the terms of the policy, which provided for double indemnity "upon due proof that the death of the insured occurred in consequence of bodily injury effected solely through external, violent and accidental means . . . independent of all other causes. . . ." In consequence of insured's death, defendant paid the face amount of the policy to plaintiff, but refused to pay the additional $3,000 as double indemnity upon the policy. Plaintiff recovered a verdict in the court below. The defendant appeals from the order of the court in banc refusing its motions for judgment non obstante veredicto and for a new trial.

Viewing the evidence in a light most favorable to the plaintiff, as must be done in considering defendant's motion for judgment non obstante veredicto, the following facts appear: The insured lived in Carnegie, where he was engaged in buying coal from the mines and hauling it away in his truck to sell at retail. As the result of a dispute with certain mine owners, he was arrested on the evening of Monday, December 18, 1933, and lodged for a night in the Carnegie police station. There was no heat in the cell in which he was confined, although the temperature outside was near the freezing point. The next morning, Tuesday, December 19th, he was taken by automobile to the Allegheny County jail. On this trip

he was further exposed to the cold weather. Upon his arrival at the jail, he complained of being ill, but received no medical treatment other than some "pills and salts" which were given to him by one of the prisoners, who acted as the jail physician's assistant. On Wednesday, December 20th, insured was taken back to the Carnegie jail and then to a hearing before a justice of the peace at Heidelberg, Allegheny County. When he was returned to the Allegheny County jail he manifested symptoms of acute illness. He asked to see a doctor. Instead of medical attention he was given an additional dose of "pills and salts."

During Wednesday evening the insured became delirious and created a disturbance in his cell. The guards, mistaking his condition as delirium tremens, placed him in a straight jacket and walked him up and down the aisle between the cells. In the course of the forced walking, the insured was treated roughly. He was pushed and pulled along; he fell down several times, and at least on one occasion he was struck in the face. It was testified that the purpose of this brutal treatment was to exhaust him, so that he would lie down to sleep. While still being walked, he collapsed and died.

At the request of the coroner of Allegheny County, Dr. McMeans performed an autopsy upon the remains within two hours after the death. He was called as a witness by plaintiff and gave a detailed description of the condition of the body. He said the only evidence of external injuries were bruises over various parts of the body and a few superficial lacerations. He stated that in his opinion death was due to lobar pneumonia of the lower lobe of the left lung; that the physical abuse and bruises which the insured received did not produce nor cause the pneumonia, but that the disease was well established at the time of death. He testified that the forced walking "did not do insured any good." The other physician called by plaintiff, Dr. Cavan, stated that in his opinion

there was no doubt that insured's death resulted from pneumonia; that the exposure to which insured was subjected following his arrest had caused the development of pneumonia. He also said that the walking treatment and over-exertion which deceased received was an important contributing factor in weakening the action of the heart and hastening the death from pneumonia.

The question whether the death of the insured occurred as the direct result of bodily injuries independent of all other causes depends, in the present case, upon the testimony of the two physicians mentioned. There was no other testimony offered upon the question. Under the terms of the policy, as we have seen, the beneficiary is entitled to the double indemnity only where the death occurred by reason of bodily injury effected *solely* through external, violent and accidental means *independent of all other causes*. A careful study of the medical testimony reveals no evidence upon which it can be held that this condition of the policy was fulfilled. Both doctors testified that death was due to lobar pneumonia rather than to any of the "external, violent and accidental injuries" which insured received while being forced to walk in a straight jacket. One of the doctors (Dr. Cavan) finally expressed his opinion in these words: "I would say it [i. e. the exposure to cold and the forced exertion] was not a contributing factor, but the cold and the exposure were the cause of it [the pneumonia], and the walking up and down was a very important and potent contributing factor in bringing about the actual death of the patient."

Viewing the medical testimony most favorably to plaintiff, it shows at best that whatever bodily injuries the insured received were only a contributing factor in causing his death, and not the sole cause within the meaning of the terms of the policy. As we said in *Ewing v. Equitable Life Assurance Society*, 320 Pa. 577, where suit was brought to recover disability benefits

upon a policy, the language of which is almost identical with that before us (p. 580) : "The jury was told that there could be no recovery unless the loss and disability were solely attributable to the accident. This instruction was required by the provisions of the policies. All of the evidence was to the effect that the accident was not the sole factor, and a verdict for plaintiff could not have been sustained."

The cases relied upon by appellee, in which the accidental injury *caused* or brought about directly a disease or infection resulting in death or disability, are distinguishable from the instant case. In these cases the injury definitely started the chain of events resulting in death or disability, and can be said to be the sole and independent cause thereof: *Farner v. Mass. Mut. Accident Assn.*, 219 Pa. 71; *Dale v. Standard Accident Ins. Co.*, 307 Pa. 398; *Neely v. Provident Life and Accident Ins. Co.*, 322 Pa. 417. From the testimony here it definitely appears that the bruises and over-exertion insured received while in jail did not cause the disease from which he died. Nor was it established by the testimony that such bruises or injuries were of such a nature as to cause his death solely and independently of the disease. The only finding which the testimony in this case will support is that the injuries were but a contributing cause of insured's death, and this, as we have pointed out, is not enough to make defendant liable for double indemnity under the terms of the policy.

Moreover we are of opinion that the recovery of double indemnity is excluded here under that provision of the policy which says: "This agreement, to pay an increased amount in the event of death from bodily injury, does not cover . . . death resulting directly or indirectly from bodily . . . infirmity . . . or bacterial infections other than infections occurring simultaneously with and in consequence of an accidental cut or wound."

The medical testimony established the fact that pneumonia, the cause of death, is a "bacterial infection," and

to us it seems beyond all question that it is a bodily infirmity within the meaning of the terms of the policy. See *Urian v. Scranton Life Ins. Co.*, 310 Pa. 144; *Ewing v. Equitable Life Assurance Society*, supra (p. 579); *Westbrook v. Continental Life Insurance Co.*, 111 Pa. Superior Ct. 563.

Binding instructions at trial would have been proper, and defendant's motion for judgment non obstante veredicto should have been granted by the court below.

Judgment is reversed and is here entered for defendant.