## Roeper *v.* Monarch Life Insurance Company, Appellant.

Argued October 16, 1939.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*H. E. McCamey,* with him *H. A. Robinson,* of *Dickie,
Robinson & McCamey,* for appellant.

*Clair D. Moss,* for appellee.

OPINION BY KELLER, P. J., January 30, 1940:

The court below apparently treated this case as if
it were to be governed by the principles applicable to
an action for damages for personal injury or wrong-
ful death. There was probably sufficient evidence of
causal connection between the accident suffered by
plaintiff's insured and his disability and death to war-
rant a finding that they were caused by the accident,
within the rules applicable to actions for damages for
personal injury and wrongful death. But this was an
action on an insurance policy for accident indemnity
and it must be governed by the specific language of the
policy.

Three clauses are involved, under the general head-
ing, ACCIDENT INDEMNITY. One, with the sub-heading,
*Total Loss of Time,* reads: "(1) The Company will pay

at the rate of $15 per week, for the number of consecutive days, but not exceeding one hundred and four (104) consecutive weeks, for loss of time resulting exclusively from bodily injuries caused solely by accidental means, which injuries shall leave visible marks of contusions, wounds, fracture or dislocation upon the body, require the regular personal attendance of a qualified physician and shall immediately, wholly and continuously disable the insured from transacting any and every kind of business pertaining to his occupation."

A second, under the sub-heading, *Specific Total Losses,* provides: "(3) The principal sum of this policy is One Thousand Dollars. If, within one hundred and eighty (180) days from date of accident, any one of the following specific losses shall result solely from bodily injuries as described in paragraph (1) the Company will pay, in lieu of any other indemnity: For loss of LIFE, including accidental drowning ...... The Principal Sum."

A third, under the sub-heading, *Special Death Indemnities,* provides: "(5) If blood poisoning or septicaemia due solely to bodily injuries as described in paragraph (1), freezing caused by involuntary exposure, hydrophobia or involuntary asphyxiation, shall result in the death of the insured within ninety days from date of exposure or infection, the Company will pay, in lieu of any other indemnity, one-fourth of the principal sum in this policy."

The facts may be stated briefly as follows: Plaintiff is the widow of William H. Roeper. On September 9, 1920, when Roeper was forty-eight years old, an insurance company, of which defendant is the successor, issued to him an insurance policy containing the above recited provisions, naming his wife as the beneficiary, which was in full force and effect on December 24, 1934. On this latter date, the insured was injured by a stone falling or being thrown upon his right foot. At the time of this accident Roeper was suffering from

diabetes mellitus (58a, 67a, 90a-91a) and arteriosclerosis (60a). The stone caused a contusion or bruise, which produced a swelling on the foot. There is some testimony that the foot may have been frostbitten. In any event gangrene set in at the site of the foot injury, necessitating amputation of the fifth toe of the right foot, followed, on February 26, 1935, by amputation of the right leg, up to the middle portion of the upper leg. He was discharged from the hospital as a convalescent on March 13, 1935, but died on March 17, 1935 from a coronary occlusion, which was described as a closing of the coronary arteries to the heart.

Dr. Heazlett, the physician who attended the insured at the West Penn Hospital and was called as a witness by plaintiff, testified that the gangrene which required the amputation of the leg, was diabetic gangrene (50a, 53a, 57a); in other words, that the diabetes mellitus from which the insured was suffering was at least a contributing cause of the amputation of the foot; and that the coronary occlusion, which resulted in his death, while it may have been attributable to the amputation, was due in some degree to the arteriosclerosis[1] from which the insured also suffered.

Dr. Greenfield, the insured's physician before he went to the hospital, also called as a witness by plaintiff, corroborated Dr. Heazlett as to the insured's suffering from diabetes mellitus and the diabetic character of the gangrene (94a-96a).

Dr. Kling, who amputated the toe and leg and testified as a witness for plaintiff, classified the trouble as gangrene and said Dr. Heazlett had treated the patient to keep the diabetes under control. From the history which he received from the patient, he assumed that he

---

[1] "He had generalized arteriosclerosis; that goes with diabetes ...... diabetes enhances that ...... [Arteriosclerosis] is hardening of the arteries" (60a) ...... "[Coronary occlusion] isn't apt to happen except where you have some hardening of the arteries" (62a).

had had an injury, which developed first a bruise to his toe and foot; resulting, secondly, in degeneration of his foot, gangrene and infection; resulting, thirdly, in or necessitating amputation of his leg. The patient had convalesced sufficiently from his amputation so that he was able to get up and around, and then had a sudden occlusion or closing off of his coronary vessels, probably due to a blood clot which was liberated in the bloodstream from one of the recently tied off veins in his leg. He was "not quite clear" as to whether death would have resulted independently of arteriosclerosis or diabetes mellitus (110a); but thought it "possible" that he might have died even though he had not been suffering from diabetes or arteriosclerosis (110a).

The defendant offered no testimony.

There was no medical testimony contradicting Dr. Heazlett and Dr. Greenfield, and Dr. Kling's testimony does not support a finding that the insured's death resulted *solely* from the accidental injury to the foot, or that the insured's loss of time, due to the gangrene of the foot and its amputation, was caused *solely* by the accident to his foot. While the injury to the foot may have set in motion forces which ultimately caused the disability and death, the diabetes unquestionably contributed to the gangrene, which necessitated the amputation of the foot, and the arteriosclerosis was a contributing factor to the coronary occlusion, which, following the amputation, caused the insured's death.

To justify a recovery on this policy the plaintiff was required to produce evidence that the accidental injury to the foot was the *sole* cause of the disability and death. See *Lubowicki v. Metropolitan Life Ins. Co.*, 114 Pa. Superior Ct. 596, 599, 174 A. 649, 650; *Cockcroft v. Metropolitan Life Ins. Co.*, 125 Pa. Superior Ct. 293, 297, 189 A. 687; *Brandeis v. Metropolitan Life Ins. Co.* 116 Pa. Superior Ct. 558, 562, 176 A. 789. This she wholly failed to do. Dr. Kling's testimony falls far short of the requirement; and her other medical wit-

nesses proved the contrary. If the disability and death were contributed to by other causes not accidental but the natural effects of disease, the policy gives no right of recovery.

It follows that at the close of the testimony the defendant's points for binding instructions should have been affirmed; and, following a verdict for the plaintiff, its motion for judgment non obstante veredicto should have been granted and judgment entered for the defendant on the whole record.

Instead, the court granted plaintiff's motion for a new trial, because the trial judge had failed to instruct the jury on the question of interest.

As the defendant, at the close of the testimony was entitled to judgment in its favor, and the only reason for awarding a new trial was to allow the recovery of interest on a verdict to which the plaintiff was not entitled, (See *Hodgson v. Bigelow,* 335 Pa. 497, 7 A. 2d 338; *Aland v. P. G. Publishing Co.,* 337 Pa. 259, 10 A. 2d 5), the order must be reversed and judgment be entered for the defendant non obstante veredicto.

It is so ordered.