Frame, Appellant, *v.* Prudential Insurance Company of America.

Argued November 25, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*William B. Washabaugh, Jr.,* for appellant.

M. E. *Graham,* with him *Gifford, Graham, MacDonald & Illig,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 5, 1948:

The question concerns the amount of proof required of plaintiff in this action on an insurance policy to

recover the amount payable if the death of the insured resulted solely from an accident.

The policy insured the life of David A. Frame in the amount of $5,000 and an additional $5,000 if his death occurred "as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, . . . ; provided, however, that no Accidental Death Benefit shall be payable if such death resulted . . . directly or indirectly from bodily or mental infirmity or disease in any form."

On November 20, 1944 the insured, 71 years of age, suffered a fall downstairs in his home; he sustained a fractured right hip, three broken ribs and a large bruise on the side of his head together with severe shock and pain; he was confined thereafter to his bed, grew progressively worse, and died January 8, 1945. The Insurance Company refused to pay the accidental death benefit of $5,000 and this suit was brought by his widow, Alice Frame, who was the beneficiary of the policy, to recover that amount. She obtained a verdict in her favor but the court entered judgment for defendant n. o. v. on the ground that her evidence did not sufficiently meet the terms of the policy upon which the Company's liability was conditioned. Plaintiff appeals.

The factual issues were (1) whether the insured's fall was due to his slipping on the stairway or to a possible attack of vertigo, and (2) whether a preëxisting infirmity was a contributing cause of his death. It appeared that five years previously he had had a cerebral hemorrhage which had resulted in a partial paralysis of his right side and an impediment in his speech, and it was upon that fact that the Company based its defense.

The rule, as it has been generally stated, is that, where a policy has provisions such as those here contained and it appears that the death of the insured resulted from accidental injury acting in conjunction with a preëxisting and substantial physical infirmity,

recovery must be denied; plaintiff must show that the death was caused solely by external and accidental means, and if the proof points to a preëxisting infirmity or abnormality which may have been a contributing factor he must also produce evidence to exclude that possibility: *Lucas v. Metropolitan Life Insurance Company*, 339 Pa. 277, 280, 14 A. 2d 85, 86; *Rodia v. Metropolitan Life Insurance Co.*, 354 Pa. 313, 315, 316, 47 A. 2d 152, 153. It should be added, however, that the word "possibility" in that connection is not to be taken in its absolute or literal sense, but rather as having the practical meaning which the law ordinarily ascribes to such abstract terms.

In the present case plaintiff produced testimony of eyewitnesses to the effect that the insured had ascended a few steps from the first to the second story of his house when he slipped and fell down the stairs after a vain attempt to save himself by clutching at a hanging curtain. There was testimony that the steps had been waxed, a fact which in itself would reasonably suggest the cause of the accident. Defendant propounded the theory that he might have had an attack of dizziness due to the high blood pressure or hypertension which had caused his stroke five years before but plaintiff's uncontradicted evidence established that during that entire period he had been in excellent systemic health, had never been in bed due to any illness, and had not had any attacks of vertigo. His physician, Dr. Switzer, testified that he had checked his blood pressure a couple of times and found it to be normal for a man of his age—150 systolic, 80 diastolic; that he did not have any coronary disease; that his arteries "were a little hard, maybe, but I don't think they were out of the way for a man 71". There was not a scintilla of evidence that at the time the fall occurred he had any circulatory disturbance which might have produced a momentary instability or that his misadventure was caused in any manner other than by his slipping on a waxed step.

It was upon the provision of the policy that no accidental death benefit should be payable if the death of the insured resulted "directly or indirectly from bodily or mental infirmity or disease in any form" that defendant placed its chief reliance. While Dr. Switzer testified that in his opinion the cause of death was "fractured hip, fractured ribs, and bruises on his head, shock, and due to a fall downstairs", he did not "think there was any contributing cause", and it was his opinion that "this accident was the sole cause of his death", he admitted on cross-examination that it was *possible* that "an injury occurring to one who had a hypertensive heart disease could light that up, aggravate it, and have something to do with an ensuing or resulting condition," and that he could not exclude the paralysis as a *possible* contributory factor. He reiterated, however, that he could not say that it *was* such a factor; he stated that any one of the injuries that the insured had suffered was enough to cause his death, that he was so badly injured the doctor did not "think he'd live until morning", and that "he didn't die of a stroke". It is true he was confronted with a letter he had written to the Company in which he stated that Frame died "as a result of a fall . . . which aggravated the above condition" (hypertensive heart disease), and also with the death certificate he had signed and in which he had inserted under the caption "contributory causes" the words: "cerebral hemorrhage with paralysis rt. leg and arm; duration 5 years." Such statements, however, in death certificates are always open to explanation, and Dr. Switzer said that by "contributory causes" he was referring merely to "other conditions". The fact that such conditions—the paralysis of the arm and the impediment of the speech—had existed for five years, was, of course, admitted from the beginning, but, as already stated, Dr. Switzer testified that in his examinations prior to the accident he found no such chronic circulatory condition as would indicate the likelihood of any

further attacks due to arteriosclerosis. Medical science not being infallible, every cautious medical witness would no doubt be compelled to say that in the domain of pathology "possibilities" must always be taken into consideration; what Dr. Switzer asserted, however, was that, in his professional opinion, no preëxisting disease or infirmity *did* contribute to the insured's death. So far from plaintiff's proof "pointing" to a preëxisting infirmity or abnormality as a contributing factor it pointed entirely in the opposite direction and the evidence was sufficient on that point amply to justify the verdict of the jury. The right to recover on the policy was barred only if there was *in fact* such a contributing factor, not if, as a mere matter of speculation, there might have been. It might be added that there is an important difference between an actual disease and ailments or predispositions common to advancing age, such, for example, as arteriosclerosis in a degree not disproportionate to the age of the insured; this distinction was pointed out by Judge Cardozo in *Silverstein v. Metropolitan Life Insurance Co.*, 254 N.Y. 81, 171 N.E. 914, and has been approved by this court in *Arnstein v. Metropolitan Life Insurance Co.*, 329 Pa. 158, 162, 163, 196 A. 491, 493; *Kelly v. Prudential Insurance Co.*, 334 Pa. 143, 151, 6 A. 2d 55, 59; and *Real Estate Trust Co. of Philadelphia, Trustee, v. Metropolitan Life Insurance Co.*, 340 Pa. 533, 541, 542, 17 A. 2d 416, 420. Indeed, were the law otherwise, an accidental death benefit provision in an insurance policy would be practically valueless to an elderly person, since, even if an accident were to befall him of a violence sufficient to bring about a fatal result, his naturally hardened arteries and weakened heart action would probably make it impossible in most instances to say that those factors, by lessening his resistance or by being "aggravated" or "lit up" by the occurrence, did not "possibly" contribute to his death.

Judgment reversed and record remanded with direction to enter judgment on the verdict.