Dauphin Deposit Trust Company *v.* Lumbermens
Mutual Casualty Company, Appellant.

Argued March 10, 1952. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*F. Brewster Wickersham,* with him *Metzger & Wickersham,* for appellant.

*George Kunkel,* with him *Charles J. Ware,* for appellee.

OPINION BY RENO, J., July 17, 1952:

Dauphin Deposit Trust Company, executor of the estate of Charles William Hardt, deceased, instituted assumpsit against Lumbermens Mutual Casualty Company upon a policy of insurance, and recovered a verdict. Defendant appealed from refusal of its motion for judgment n.o.v.

The pertinent provisions of the policy insured Hardt "against loss resulting directly and independently of all other causes from bodily injuries . . . solely through accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect or infirmity, and sustained: A. While driving or riding in a private passenger automobile of the pleasure car type."

Plaintiff claims that the injuries suffered by Hardt in an automobile collision caused his death. The defense was that a pre-existent coronary thrombosis caused Hardt's death, and that he was actually dead before the collision.

In suits upon policies of this type, plaintiff must establish more than a causal relation between the accident and the death. He must show that the death was caused solely by external and accidental means, and if the proof points to a pre-existent infirmity, which may have been a contributing factor, plaintiff must also produce evidence to exclude the possibility. *Rodia v. Metropolitan Life Ins. Co.,* 354 Pa. 313, 47 A. 2d 152. It should be noted, however, as Mr. Justice HORACE STERN pointed out in *Frame v. Prudential Ins. Co.,* 358 Pa. 103, 106, 56 A. 2d 76, "that the word 'possibility' in

that connection is not to be taken in its absolute or literal sense, but rather as having the practical meaning which the law ordinarily ascribes to such abstract terms." At another place (p. 108), he said: "The right to recover on the policy was barred only if there was *in fact* such a contributing factor, not if, as a mere matter of speculation, there might have been." That is to say, plaintiff is not required to produce conclusive or incontrovertible evidence which excludes the possibility of a contributing factor. He meets the requirements of the burden of proof resting upon him where his evidence forms the basis for a sound conclusion that the accident, and not the contributing factor, was the actual, immediate and direct cause of the death.

Before reviewing the evidence it should be stated that since plaintiff has the verdict, all the evidence and all the inferences fairly deducible therefrom which are favorable to plaintiff must be taken as true and all evidence and inferences unfavorable to it must be rejected. *Foulkrod v. Standard Accident Ins. Co.*, 343 Pa. 505, 23 A. 2d 430; *McIntyre v. Equitable Life Assur. Soc.*, 324 Pa. 417, 188 A. 172.

At the time of the accident Hardt was 74 years of age. He was employed by the State Highway Department as an engineer in charge of township roads in four counties, and his duties required constant travel by automobile through his territory. His son testified that his father was "in excellent health all his life", and that on the morning of the accident "he seemed to be in fine spirits, he was in excellent health, couldn't have been better." Defendant in its brief concedes that "he appeared to be in good health." Ten months before the accident, Dr. Paul A. Kunkel had performed a surgical operation, described as "a repair of a recurrence of his original hernia", from which Hardt completely recovered. At that time, the doctor testified that his blood pressure was "118 over 64",

which "indicated essentially that his heart and blood vessels were essentially normal," and that the hernia had no effect upon the condition of his heart or his arteries.

While driving his automobile on the State highway between Harrisburg and Camp Hill he collided head-on with a tractor truck, and when the two vehicles came to rest they were on the same side of the road. A State Policeman, who arrived upon the scene of the accident shortly after the occurrence, found Hardt dead, seated behind the steering wheel, leaning with his left side against the window, his left leg on the floor away from the clutch, and his right foot on the gas pedal. His injuries, averred in the complaint and admitted in the answer, consisted of (a) abrasions of various parts of his body, (b) lacerations on his head and face, (c) fractures of the left patella, femur, elbow, four left ribs, second right rib and nose, and (d) internal injuries: a long laceration in the pericardium, a rupture which almost completely severed the aorta, and a laceration into the left auricle. In the thoracic cavity were three quarts of bloody fluid.

In response to a hypothetical question plaintiff's witness, Dr. Paul A. Kunkel, testified that a person who suffered the enumerated injuries would die, that the described rupture in the aorta would result in instantaneous death, since a hole in an aorta is incompatible with life. This testimony must be accepted as the firm basis for the ineluctable inference, an inference to which plaintiff is clearly entitled, that the immediate cause of death was the ruptured aorta.[1] On

---

[1] A physician's testimony that an injury *could* have resulted from an accident is insufficient to support a verdict where the jury's finding must rest solely upon expert testimony, but if there are other facts in the case which can be accepted as true they may fairly raise the inference that the cause of the injury was as

cross-examination he admitted that he knew that a post-mortem examination had revealed the presence of a thrombosis or blood clot in the coronary artery but, notwithstanding his knowledge of that fact, he reiterated his testimony. In that connection it should be stated as evidence favorable to plaintiff, that Dr. Eurfryn Jones, who performed the autopsy and testified for defendant that the thrombosis caused the death, *could not tell whether the thrombosis was formed before or after the death.*

Defendant produced a witness who saw Hardt driving his car 2 miles from the scene of the collision in a zigzag fashion, with his head leaning against the left window. Dr. Edward A. Haegele, the coroner and a physician, examined Hardt's body at the scene and concluded, because of little external bleeding, his "heart must have stopped before the accident." Dr. Eurfryn Jones performed the autopsy and found, besides the injuries already enumerated, a "coronary sclerosis, or almost calcification of the coronary arteries. In the posterior coronary artery, in the middle portion of the artery, there was a coronary thrombosis one-half inch long." Because of the little external bleeding and from his findings in the post-mortem examination, he concluded that the cause of death was the coronary thrombosis and that the thrombosis was not caused by the collision, although, as already stated, he testified, "I cannot honestly say what time the thrombosis formed."

In rebuttal plaintiff called Dr. John E. Kurtz, who had performed more than a thousand post-mortem examinations. He explained the differing physical characteristics and appearances of ante-mortem blood clots which are formed before death and post-mortem clots formed after death. He testified that in his numerous

claimed by the plaintiff. *Sullivan v. B. & O. R. R.*, 272 Pa. 429, 435, 116 A. 369.

post-mortem examinations he had found "evidences of blood clots sometimes in the coronary arteries which have been old and which have been healed" and "clots in the coronary arteries . . . which I consider of post-mortem or after death formations." Considered in connection with the testimony of Dr. Jones, who could not tell when the blood clot was formed, the possibility of coronary thrombosis as the cause of death becomes gravely doubtful and speculative. Taken as a whole the plaintiff's evidence was sufficient to carry the case to the jury and to justify its verdict.

Defendant relies exclusively upon the *Rodia* case, supra, where a barber became sick, "fell against the wall and struck the back of his neck or head." Plaintiff's physician testified "that the cause of death must have been due to the injury to the head, [but] she definitely destroyed the effect of that answer by her statement that she would have to examine the brain in order to tell actually what the cause of death was." Here the plaintiff showed that the cause of death was the rupture of the aorta, a condition which an intelligent layman, even without the aid of medical testimony, could readily find as a cause of death. Moreover, Rodia admittedly had "Heart Trouble", and, without definite evidence that the injury to his head was the cause of death, the possibility that the heart condition was a contributing factor had not been evidentially excluded.

The *Frame* case, supra, is more in point. There the insured, 71 years of age, slipped on a stairway, and sustained severe injuries, and died. Five years previously he had a cerebral hemorrhage resulting in a partial paralysis on his right side and an impediment in his speech. His arteries "were a little hard, maybe, but . . . [not] out of the way for a man 71." The insurer attributed the fall to a possible attack of vertigo and defended on the decedent's pre-existing infirmity as a contributing cause. A recovery was allowed upon a

policy whose terms were similar to the one in suit. Mr. Justice HORACE STERN concluded his opinion by a statement (p. 108) which is relevant here: "It might be added that there is an important difference between an actual disease and ailments or predispositions common to advancing age, such, for example, as arteriosclerosis in a degree not disproportionate to the age of the insured; this distinction was pointed out by Judge CARDOZO in Silverstein v. Metropolitan Life Insurance Co., 254 N. Y. 81, 171 N. E. 914, and has been approved by this court in Arnstein v. Metropolitan Life Insurance Co., 329 Pa. 158, 162, 163, 196 A. 491, 493; Kelly v. Prudential Insurance Co., 334 Pa. 143, 151, 6 A. 2d 55, 59; and Real Estate Trust Co. of Philadelphia, Trustee, v. Metropolitan Life Insurance Co., 340 Pa. 533, 541, 542, 17 A. 2d 416, 420. Indeed, were the law otherwise, an accidental death benefit provision in an insurance policy would be practically valueless to an elderly person, since, even if an accident were to befall him of a violence sufficient to bring about a fatal result, his naturally hardened arteries and weakened heart action would probably make it impossible in most instances to say that those factors, by lessening his resistance or by being 'aggravated' or 'lit up' by the occurrence, did not 'possibly' contribute to his death."

Judgment affirmed.