**Sidney E. LEWIN**

v.

**METROPOLITAN LIFE INSURANCE COMPANY.**

**Civ. A. No. 29487.**

United States District Court

E. D. Pennsylvania.

Aug. 8, 1966.

Richard B. Malis, Philadelphia, Pa., for plaintiff.

Arthur W. Leibold, Jr., Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

Plaintiff, Sidney E. Lewin, recovered $33,700 plus interest at trial against defendant, Metropolitan Life Insurance Company under two insurance policies for disability and specific loss benefits. Defendant has filed a motion for judgment notwithstanding the jury verdict or in the alternative for a new trial.

### I. THE FACTS

Plaintiff testified by deposition that while taking a shower in a hotel room on June 7, 1960, he stepped on a sharp object with his right foot, which bled for a time, and he consulted Dr. Waldow on June 18, 1960, eleven days after the alleged event, who called in surgeons, Drs. Stein and Cullen, to care for plaintiff.

Lewin was admitted to Jewish Hospital on June 23, 1960. On June 27, 1960 the third and fourth toes on his right foot were amputated; on July 18, the small toe was amputated; and on July 25, 1960, plaintiff's right leg was amputated above the knee.

Lewin filed a claim with the company under two policies of insurance. Under the 1936 policy, if the provisions had been fulfilled, plaintiff would have received $2,500 for the loss of one foot and $25.00 per week, up to a maximum of 262 weeks, disability benefits. If the provisions of the 1945 policy had been fulfilled, plaintiff would have received $5,000 for the loss of one foot and $75.00 per week, up to a maximum of 262 weeks, disability benefits.

The language of the 1945 policy coverage is as follows:

"If, while this policy is in force, the insured shall sustain bodily injuries caused directly and independently of all other causes by external, violent, and accidental means, and if such bodily injuries shall cause, directly and independently of all other causes, any of the results hereinafter enumerated * * * the Company pay * * *

"This policy shall not cover * * * any of the results enumerated * * * which are caused directly or indirectly, wholly or partly, by (f) ptomaine or bacterial infection, exception only septic infection of and through a visible wound caused, directly and independently of all other causes; by external, violent, and accidental means."

The 1936 policy is very similar in coverage.

### II. MOTION FOR JUDGMENT N. O. V.

Metropolitan's primary contention is that plaintiff has failed to sustain his burden of proof by not showing that his pre-existing infirmities did not cause, in whole or in part, directly or indirectly, the loss of his foot and his disability.

Plaintiff in such cases must prove that the disability and loss resulted from an external, violent and accidental

force and must show causal relationship between the accident and the injuries. In addition, he must show that the death was not produced directly or indirectly by disease or bodily infirmity. O'Neill v. Metropolitan Ins. Co., 345 Pa. 232, 239, 26 A.2d 898, 142 A.L.R. 735 (1942). He is required to exclude as a causative factor all pre-existing and substantial infirmities which may have combined with the accident to produce the loss. Roeper v. Monarch Life Ins. Co., 138 Pa.Super. 283, 11 A.2d 184 (1940). The accident in other words must have been the sole cause of the loss. If disease, however, while existing be but a condition and the accident the moving, sole and proximate cause of the loss, the case is within the coverage of the policy. Foulkrod v. Standard Accident Ins. Co., 343 Pa. 505, 23 A.2d 430 (1942). If a septic infection was the cause of the loss and disability, plaintiff must also exclude all pre-existing and substantial infirmities which may have aided and abetted the infection.

 The motion for judgment notwithstanding the verdict must be denied if there is any substantial evidence which would support a verdict. Credibility of witnesses and weight of the evidence are not proper concerns of the court. The evidence must be viewed in the light most favorable to the plaintiff in this case. He must be given the benefit of all legitimate inferences which may be drawn in his favor. Moreover, the motion must be denied if reasonable men might differ as to the conclusions of fact to be drawn from the evidence. 2 Barron & Holtzoff, Federal Practice & Procedure (Wright Ed.) § 1075.

Dr. Waldow, the physician who attended the plaintiff before his amputation and occasionally thereafter and was called as a witness by plaintiff, testified that the amputation was determined to be necessary by reason of the infection alone as the sole and independent cause. He had examined Mr. Lewin's legs in *April, 1960,* finding decreased pulsations in and decreased circulation to the lower extremities which he indicated could easily cause problems. Further, he stated that in a man with both arteriosclerosis and diabetes mellitus, infections were more difficult to control than under ordinary circumstances. In Mr. Lewin there could well have been total occlusion of the popliteal artery located behind the knee, which if so would have meant a serious impairment of blood supply to the foot which of course would reduce ability to fight infection.

Dr. Sacks, who examined the insured only once, on *September 30, 1964,* also testified that the infection which Mr. Lewin had on the date of amputation was entirely sufficient of and by itself to have resulted in a decision to amputate the leg. He stated that reduction in blood flow makes more likely the possibility that the most minor kinds of injury are capable of breaking through the skin and introducing infection. If there is a break in the skin and bacteria enters, there is risk of infection, which will produce a threat to limbs in a person with arteriosclerosis.

With a severe reduction in blood flow to a part of the body, infection introduced may be more difficult to overcome although Dr. Sacks did not think that there was any serious evidence that diabetes itself was an important contributor to susceptibility to infection. He further stated that he was not convinced that there was evidence in favor of the statement that it was more difficult to cure infections if diabetes mellitus was present. He said that he was not sure that occlusion of the popliteal artery was particularly important in Mr. Lewin's case although he had no information about the status of circulation in Lewin's foot.

Finally, the Doctor agreed that the blood supply to the right foot at the time of the puncture injury apparently was adequate to maintain the foot in a viable state, but as events showed, inadequate to heal an injury or to prevent the spread of infection. He conceded that Mr. Lewin had diabetes and that the arteries of his right leg were severely affected and some occluded by an arterio-

sclerotic process. He concluded that the infection which resulted from the puncture wound was the straw in this case that broke the camel's back, by which he meant the reason for the need for an amputation.

It is conceded that the infection which Dr. Waldow found on June 18, 1960 was a septic infection and that in Mr. Lewin it was sufficient cause for the amputation of the leg.

Dr. Waldow's opinion was of little use in proving plaintiff's case. His testimony does not support a finding that the insured's disability resulted solely from the accidental injury to the foot. All he said was that the infection was a sole and independent cause of the loss; he nowhere said that were it not for the arteriosclerosis and diabetes mellitus, the infection would have progressed to such a degree as it did or that any infection at all would have resulted from the puncture wound. These he must have especially eliminated since he had testified that infections are much more difficult to control than under ordinary circumstances in a man with both arteriosclerosis and diabetes mellitus; and that if a person has arteriosclerosis of the severity of Mr. Lewin and has diabetes of his duration, he is a prime candidate for problems if he cuts the skin or gets any infections and does not get proper care.

Dr. Sack's testimony that the infection was the sole cause of the amputation must be interpreted in light of his later testimony that the infection was the straw that broke the camel's back, reflecting his opinion that the poor blood flow to the foot precluded effective control of the infection.

Dr. Sacks did not say that the infection was or was not caused by the puncture wound and became a threat to Mr. Lewin's limbs without the reduced blood flow. He testified at one point indirectly that an abnormal blood flow to the foot may be sufficiently urgent to create the need for meticulous care of the foot to prevent breaks in the skin. Reduced blood flow would make likely the possibility that the most minor kind of in-

jury, such as stubbing a toe, would be capable of breaking through the skin and introducing infection. It is the introduction of infection which produces the threat to life and limb in patients who have arteriosclerosis.

Plaintiff's argument that there was no testimony that either diabetes mellitus and/or arteriosclerosis can create infections of the kind described or contribute to the extent of the infection has no validity for two reasons. Both doctors testified that reduced blood flow in a person's legs which results from arteriosclerosis precludes effective destruction of bacteria. Secondly, there can be no recovery if the presence of these diseases merely makes the body less able to withstand infection.

Dr. Sacks was obviously unable to exclude any diseases as a cause of the amputation because he did not examine Mr. Lewin before or approximately near to the time of the amputation, and it is clear from Dr. Waldow's testimony, which is unrebutted and must be accepted by plaintiff, that Mr. Lewin did have reduced blood flow to his foot. It cannot be said that Mr. Lewin proved that if the arteriosclerosis and diabetes were not present, that the amputation and subsequent disability would ever have occurred.

We hold that under these facts, plaintiff did not sustain his burden of producing sufficient evidence so that a reasonable jury could find that the wound was the sole cause of the damages. Specifically, plaintiff did not produce any evidence to show that the arteriosclerosis and diabetes mellitus which either singly or together created a reduced blood flow to the foot did not cause the infection or result in a condition where the body was totally unable to prevent the spread of infection. There is no testimony that the infection did not progress or remain viable because of the total occlusion of the popliteal artery.

While we agree entirely with plaintiff's proposition that insurance contracts of this nature have been too

strictly construed in Pennsylvania, placing an almost impossible burden on an elderly insured, we are bound by the interpretations of the Pennsylvania appellate courts. The rule that the court should distinguish between legal and medical causes is not the law in Pennsylvania. Cf. Wolfangel v. Prudential Ins. Co., 209 Minn. 439, 296 N.W. 576 (1941).

Accordingly, the motion for judgment N.O.V. will be granted.

## III. MOTION FOR NEW TRIAL

 Defendant's motion in the alternative for a new trial must also be granted. The verdict was against the evidence and the weight of the evidence.

The trial judge has a duty to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice upon any of the parties. Sokolowsky v. Roswell, C.A. No. 31762, 7/18/66.

There was no clear testimony from either witness excluding the effect of arteriosclerosis and diabetes mellitus on the infection. Dr. Sacks stated that it was his opinion that there was no significant evidence connecting diabetes as a factor in precluding the healing of infections and that the occlusion of the popliteal artery probably had no effect in this case. However, he was far removed from the actual event to know exactly how poor a condition Mr. Lewin's blood flow was in and was sufficiently impressed with his examination in September, 1964 to advise him to be extremely careful of infection.

Moreover, he himself left the court with the rather vague statement that the infection was the straw that broke the camel's back, which indicates to us that even Dr. Sacks felt that Mr. Lewin's leg was in very poor condition to resist an infection from a puncture wound.

Dr. Waldow's testimony in no way, either theoretically or practically, excluded the effect of previous diseases on the infection suffered by Mr. Lewin.

Finally, it does not seem to us that Mr. Lewin proved satisfactorily that he had suffered an accident. Dr. Waldow could not find a puncture wound on the sole when he examined him on June 18, 1960 and the hospital reports do not mention this. The physical examination disclosed an ulcer of the heel and gangrene of the toe.

## ORDER

And now, this day of August, 1966, it is ordered that:

1. The motion for judgment N.O.V. is granted.

2. If the judgment hereby ordered to be entered is vacated or reversed, the motion in the alternative for a new trial is granted.