Ida WEINER

v.

METROPOLITAN LIFE INSURANCE
COMPANY.

Civ. A. No. 75–760.

United States District Court,
E. D. Pennsylvania.

June 30, 1976.

Malcolm H. Waldron, Jr., Philadelphia, Pa., for plaintiff.

Harvey Bartle, III, Arthur H. Rainey, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

GORBEY, District Judge.

This suit was originally brought in the state court and thereafter removed to this court by the defendant because of diversity of citizenship and a claim for an amount in excess of ten thousand ($10,000) dollars exclusive of interest and costs. This court has original jurisdiction under 28 U.S.C. § 1332.

The complaint is in four counts, each involving a separate insurance policy. The Count I policy, Policy No. 666–330–014–PR is a life insurance policy with an accidental death benefit rider. This policy provided life insurance in the amount of $60,000.00 and the accidental death benefit rider provides death benefits in the amount of $120,-000.00. The amount due under the life policy, $60,000.00, has already been paid. The Count I policy provides [1], with respect to the accidental death benefits, the following:

> The Company will pay to the Beneficiary [the benefits set forth]   .   .   . [if] the death of the Insured occurred   .   .   .· as the result, directly and independently of all other causes, of bodily injury caused solely by external, violent, and accidental means.
>
> Risks Not Covered—[these benefits] will not be payable if the Insured's death:
>
> ·   ·   ·
>
> (b) is caused or contributed to, directly or indirectly, by disease or bodily or mental infirmity, or medical or surgical treatment therefor   .   .   .

---

[1]. Among the other restrictions each of the four policies here involved provided that the accidental death benefits were payable only if death occurred within 90 days of the date of the accident.

Although the point is not involved in this particular case, it may be of interest to note that the Pennsylvania Supreme Court has held that a provision that accidental double indemnity death benefits are payable only if death occurs within ninety days of the accident, is contrary to public policy and unenforceable. *Burne v. Franklin Life Insurance Company,* 451 Pa. 218, 301 A.2d 799 (1973).

Again, although the point is not involved in the case *sub judice,* it may be noted as a matter of interest, that the Supreme Court of Pennsylvania in *Beckham v. Travelers Insurance Company,* 424 Pa. 107, 225 A.2d 532 (1967) expressly abandoned the artificial distinction previously made in the cases between accidental means and accidental results.

The Count II policy—Policy No. 1 939 653 AH is a personal accident policy payable to the plaintiff as beneficiary and which provides accidental death benefits in the amount of $10,000.00. This policy provides, *inter alia,* the following:

If, while this policy is in force, the insured shall sustain bodily injuries caused directly and independently of all other causes by external, violent, and accidental means, and if such bodily injuries shall cause, directly and independently of all other causes, [death] . . . the Company shall pay [benefits set forth] . . .

### RISKS EXCLUDED

This policy shall not cover, and no payment of any kind shall be made hereunder for [death] . . . which [is] . . . caused directly or indirectly, wholly or partly, by . . .

(b) disease, or bodily or mental infirmity, or medical or surgical treatment therefor or diagnosis thereof . . .

The Count III policy—Policy No. 3 135 456 AH is a personal accident policy payable to the plaintiff as beneficiary with accidental death benefits in the amount of $12,500.00. This policy provides, *inter alia,* as follows:

If, while this policy is in force, the insured sustains accidental bodily injuries which, directly and independently of all other causes, result in [death] . . . the Company will pay [the benefits set forth] . . .

### EXCLUSIONS

1. This policy does not cover, and no payment will be made for, [death] . . caused or contributed to by . . .

(f) Disease, or bodily or mental infirmity or medical or surgical treatment or diagnostic procedure for such disease or infirmity . . .

The Count IV policy—Policy No. 1 973 584 AH is a personal accident medical expense policy having an accidental death benefit of $7,500.00 payable to plaintiff as beneficiary.

The pertinent part of this policy is as follows:

If, while this policy is in force, the insured shall sustain bodily injuries caused directly and independently of all other causes by external, violent and accidental means and if such bodily injuries shall cause, directly and independently of all other causes [death] . . . the Company shall pay [the benefits set forth] . . .

### RISKS EXCLUDED

This policy shall not cover, and no payment of any kind shall be made hereunder for [death] . . . which [is] . . . caused or contributed to by . . .

(f) Disease, or bodily or mental infirmity or medical or surgical treatment therefor or diagnosis thereof . . .

With respect to policies 2, 3 and 4, the defendant has raised the additional defense that no affirmative proofs of loss were furnished to the defendant insurance company within the ninety days after the date of the insured's death, as required by the policies. The principal defense of defendant insurance company is that the insured did not die an accidental death under the terms of the policies. It is conceded by both parties that the law applicable is the law of Pennsylvania.

As pointed out in *Johnson v. Kentucky Central Life & Accident Ins. Co.,* 144 Pa.Super. 116, 18 A.2d 507 (1941) there are two classes of cases which must be sharply distinguished, *i. e.* (i) where the terms of the policy provide for the payment of the accidental death benefit in the event of the death of the insured, resulting directly and independently of all other causes through external, violent and accidental means; (ii) where the policy contains an additional restrictive clause avoiding payment of the indemnity if "death of the insured results directly or indirectly from disease or from bodily or mental infirmity". *Id.* at 511.

The first class of cases is represented by *Kelley v. Pittsburgh Casualty Co.,* 256 Pa. 1, 100 A. 494 (1917). In that case, the court wrote, *inter alia*:

" '. . . Where accidental injury aggravated a disease, and thereby hastened death so as to cause it to occur at an earlier period than it would have occurred but for the accident, it is the direct, independent, and exclusive cause of death . . . The phrase "resulting directly, independently, and exclusively in death" refers to the efficient, or, as some courts speak of it, the predominate cause of death . . .' " 256 Pa. at p. 7, 100 A. at p. 495.

With respect to the *Kelley* case, the Supreme Court of Pennsylvania in *Real Estate Trust Co. v. Metropolitan Life Ins. Co.,* 340 Pa. 533, 17 A.2d 416 (1941) stated:

". . . it would appear that the 'proximate cause' rule adopted in the *Kelley* case has no application in construing policies which contained the additional 'disease and infirmity' clause which was before us in the *Ewing* and *Arnstein* cases." 340 Pa. at p. 541, 17 A.2d at p. 420.

In the *Arnstein* case, 329 Pa. 158, 196 A. 491 (1938), the court adopted an interpretation of the term "bodily infirmity" in accord with that of Chief Judge Cardozo in *Silverstein v. Metropolitan Life Ins. Co.,* 254 N.Y. 81, 171 N.E. 914, in which he wrote:

"In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men . . ."

With respect to the *Arnstein* case, the Supreme Court of Pennsylvania in *Real Estate Trust Co. v. Metropolitan Life Ins. Co., supra,* 340 Pa. at p. 542, 17 A.2d at p. 420, wrote:

". . . it was clear that a plaintiff suing upon a policy of insurance containing both of the restrictive clauses which are here considered, had the burden of showing that the loss or death of the insured was caused *solely by accidental means, and that it was not produced directly or indirectly by disease or infirmity,* but that recovery was not dependent upon establishing that the insured was in a state of perfect health and free from normal ailments and predispositions compatible with his age . . ."
(Emphasis Added)

These principles were well settled at the time *Kelly v. Prudential Ins. Co.,* 334 Pa. 143, 6 A.2d 55 (1939), was decided by the Supreme Court, a case in which both of the restrictive clauses were involved.

". . . she fell upon an unlighted flight of cellar steps and sustained severe injuries to the head which resulted in her death. At the time she was suffering from an arteriosclerotic condition not unusual in persons of her age. At the trial, two issues were presented: 'First, whether the fall was the result of her tripping on the steps, and hence of an accident, or was occasioned by an attack of vertigo or dizziness incidental to a chronic condition of arteriosclerosis; and, second, whether, if the fall was accidental, the death which ensued was the result of the fall alone or of the combined effect of the fall and of the preexisting arteriosclerotic condition.' Upon both questions, the jury found for the plaintiff. This Court affirmed the judgment, holding that there was sufficient evidence to support the verdict of the jury."

340 Pa. at p. 542, 17 A.2d at p. 420.

It is to be noted that the second issue, as stated, must be interpreted in the light of the fact that the insured, at the time of the injury "was suffering from an arteriosclerotic condition not unusual in persons of her age." That case is, therefore, no authority for a recovery in a case where the infirmity is so severe and unusual for a person of the age involved.

After the decision in the *Kelly* case, the Superior Court was confronted with a case in which a diabetic person sustained an accidental injury to his foot, gangrene set in and amputation was necessary. In a few days the insured died as a result of a coronary occlusion. In holding that a judgment

should have been entered for the defendant at the close of plaintiff's testimony the court said:

"While the injury to the foot may have set in motion forces which ultimately caused the disability and death, the diabetes unquestionably contributed to the gangrene, which necessitated the amputation of the foot, and the arteriosclerosis was a contributing factor to the coronary occlusion, which, following the amputation, caused the injured's death." *Roeper v. Monarch Life Ins. Co.,* 138 Pa.Super. 283, 287, 11 A.2d 184, 186.

Referring to this case, the Supreme Court of Pennsylvania in *Real Estate Trust Co., supra,* stated:

"Following the *Kelly* case, it was held . . . in a suit upon a similar contract of insurance, that the plaintiff was required to show that the disability and death of the insured resulted *solely* from accidental injury."

340 Pa. at p. 544, 17 A.2d at p. 421.

Then followed this very significant discussion of *Lucas v. Metropolitan Life Ins. Co.,* 339 Pa. 277, 14 A.2d 85 (1940):

". . . where, as in the *Roeper* case, the plaintiff was denied recovery because his evidence did not exclude the possibility that a pre-existing, substantial infirmity contributed to the death of the insured, 'but provided an affirmative basis for such a conclusion.' We said: 'Where the liability of the insurance carrier is so restricted, *it is not sufficient for the insured to establish a direct causal relation between the accident and the loss or disability.* He must show that the resulting condition was caused *solely* by external and accidental means, and *if the proof points to a pre-existing infirmity or abnormality which may have been a contributing factor, the burden is upon him to produce further evidence* to exclude that possibility.' (Italics added) We further pointed out that the pre-existing condition which contributed to the death of the insured was not a normal or usual incident of advancing age, as in the *Kelly* case [relied upon by the plaintiff in the

case sub judice], but 'a severe and abnormal infirmity'."

340 Pa. at p. 545, 17 A.2d at pp. 421, 422.

The court further stated:

"The plaintiff's own evidence established that the insured was suffering from arthritis, arteriosclerosis and a cardiac condition, and under the rule expressly stated in the *Lucas* case, the burden was upon it to exclude the possibility that these conditions contributed to the death, or to show that they were not 'infirmities' or 'diseases' within the meaning of the restrictive clauses . . . ."

340 Pa. at p. 546, 17 A.2d at p. 422.

In *Frame v. Prudential Ins. Co. of America,* 358 Pa. 103, 56 A.2d 76 (1948) the evidence showed that the insured suffered from a specific pre-existing infirmity or condition. In that context, the court wrote:

". . . [P]laintiff must show that the death was caused solely by external and accidental means, and if the proof points to a pre-existing infirmity or abnormality which may have been a contributing factor he must also produce evidence to exclude that possibility . . . It should be added, however, that the word 'possibility' in that connection is not to be taken in its absolute or literal sense, but rather as having the practical meaning which the law ordinarily ascribes to such abstract terms."

358 Pa. at p. 106, 56 A.2d at p. 77.

In another very significant case, *Rodia v. Metropolitan Life Insurance Company,* 354 Pa. 313, 315, 47 A.2d 152, 153 (1946), the court wrote:

"Where it appears that insured's death resulted from accidental injury acting in conjunction with a pre-existing and substantial physical infirmity, there can be no recovery."

█ It is very significant that the principles established by the court in the aforementioned cases were developed with due regard for the well established rule of law that a policy of insurance is to be construed liberally in favor of the insured and strictly as against the insurer who chose the lan-

guage of the contract. *Thomas v. Metropolitan Life Ins. Co.*, 388 Pa. 499, 131 A.2d 600 (1957), and recognizing that such a rule can have no application where the language is clear and unambiguous. *Sidebothom v. Metropolitan Life Ins. Co.*, 339 Pa. 124, 14 A.2d 131 (1940). Or, stated differently, a doubt cannot be created for the purpose of resolving it in favor of the insured. *McCowley v. North American Accident Ins. Co.*, 150 Pa.Super. 540, 29 A.2d 215 (1943).

Those principles have developed although the Pennsylvania courts have recognized that forfeiture of insurance policies are not favored, either at law or in equity; it is equally true that a forfeiture does not result when payment is denied on the ground that the risk involved was not covered by the contract.

In regard to the additional defense in respect to the Count II, III and IV policies, that the plaintiff did not furnish proofs of loss within ninety days after the date of the alleged loss as required by the contracts, it is the general rule that compliance with policy provisions relating to notice and proofs of loss are conditions precedent to recovery. *Hargrave v. Fidelity Mut. Ins. Co., Phila.*, 196 Pa.Super. 627, 175 A.2d 912 (1962). The purpose is, of course, to allow an insurer to form an intelligent estimate of its rights and liabilities, to afford an opportunity for investigation, to prevent fraud and imposition upon it, and to secure for the insurer such information as the insured has so that the insurer's own investigation may be facilitated with respect to its liability or non-liability. *Aetna Life Ins. Co. v. Moyer*, 113 F.2d 974 (3d Cir. 1940).

The failure to notify within the stated time may be excused where there is a lack of knowledge of the existence of the policies, and notice is given within a reasonable time after the discovery of such existence. *Curran v. Natl. L. Ins. Co., U.S. of A., Appellant,* 251 Pa. 420, 96 A. 1041 (1916). Furthermore, a denial of liability for accidental death benefits under one policy, would make it a useless and vain act for the beneficiary to submit proofs of loss as to other policies when discovered. *Armstrong v. John Hancock Mutual Life Insurance Company*, 164 Pa.Super. 507, 66 A.2d 468 (1949). When the company received notice of the $120,000 accidental benefit claim in connection with the Count I policy it would seem that any investigation it made with respect to the facts should certainly be sufficient with respect to the relatively small amount involved in the three after discovered policies. Parenthetically, it is difficult to see how the insurance company could have been prejudiced by late notification as to the three after discovered policies for it had knowledge of the three even though the surviving beneficiary may not have had. Certainly, the significance of the requirement with respect to notice and proofs of loss is obvious in a situation where the insured is covered by only one policy with a particular company.

Against this background the court makes the following:

## FINDINGS OF FACT

1. Plaintiff Ida Weiner is a citizen of the Commonwealth of Pennsylvania residing at 9324 Laramie Road, Philadelphia, Pennsylvania. (Complaint and Answer ¶ 1)

2. Defendant Metropolitan Life Insurance Company (Metropolitan Life) is a mutual insurance company organized under the laws of the State of New York with its principal place of business at One Madison Avenue, New York, New York. (Complaint and Answer ¶ 2)

3. The amount in controversy exceeds $10,000 exclusive of interest and costs. (Complaint and Answer)

4. Metropolitan Life Insurance Policy No. 666 330 014 PR on the life of Leopold Weiner was in force on February 9, 1974. The owner and beneficiary of the proceeds of that policy was Ida Weiner. (Complaint and Answer ¶ 3; P–1)

5. Metropolitan Life personal accident policy number 1 939 653 AH issued to Leopold Weiner was in force on February 9, 1974. The beneficiary named in that policy

was Ida Weiner. (Complaint and Answer ¶ 12; P–2)

6. Metropolitan Life personal accident policy number 3 135 456 AH issued to Leopold Weiner was in force on February 9, 1974. The beneficiary named in that policy was Ida Weiner. (Complaint and Answer ¶ 20, P–3)

7. Metropolitan Life personal accident medical expense policy number 1 973 584 AH issued to Leopold Weiner was in force on February 9, 1974. The beneficiary named in that policy was Ida Weiner. (Complaint and Answer ¶ 28; P–4)

8. Leopold Weiner died on February 9, 1974, at the age of 56. (Complaint and Answer ¶ 4; Death Certificate, D–8; Rolling Hill Hospital Records, D–3A)

9. Mr. Weiner had had serious heart disease for at least ten years prior to his death. He had a myocardial infarction prior to 1964 and was hospitalized at Albert Einstein Medical Center. (Gold Testimony)

10. He was hospitalized at Rolling Hill Hospital from September 7, 1970 through October 4, 1970; from July 7, 1972 through July 29, 1972; from May 5, 1973 through May 13, 1973; and from May 25, 1973 through May 31, 1973. (Rolling Hill Hospital Records, D–3A; Gold Testimony)

11. In the case of each hospitalization at Rolling Hill, the diagnosis of his condition on discharge included among other things one of the following diseases: cardiomyopathy, congestive heart failure or coronary insufficiency. (Rolling Hill Hospital Records, D–3A: Discharge Summaries dated October 4, 1970, July 29, 1972, May 13, 1973, June 1, 1973; Gold Testimony)

12. During the period 1970 through February 1974, Mr. Weiner consulted his personal physician, Henry J. Gold, M.D., on at least a monthly basis and often four or five times per month. (Dr. Gold's office records, D–2A, D–2B; Gold Testimony) His condition deteriorated substantially over this period and from at least the middle of 1973 his state of health was poor. (Gold Testimony) His physician, Dr. Gold, did not expect Mr. Weiner to live very long following his release from the hospital in 1972 and had the same opinion following Mr. Weiner's release from the hospital in 1973. (Gold Testimony)

13. Mr. Weiner took medication daily for heart disease and was limited in his daily activities to climbing stairs not more than twice a day. (Gold Testimony; Ida Weiner Deposition, pp. 16–17)

14. Mr. Weiner was again hospitalized on February 6, 1974 and died in Rolling Hill Hospital on February 9, 1974 as a result of ventricular fibrillation due to idiopathic cardiomyopathy. (Rolling Hill Medical Records, D–3A; Death Certificate, D–8)

15. The Discharge Summary at Rolling Hill Hospital is intended to record significant events during the hospitalization of the subject patient. (Gold Testimony) The Discharge Summary for Mr. Weiner's final hospitalization which was prepared and signed by Dr. Gold contained no statement regarding any accident or fall. (Rolling Hill Hospital Records, D–3A: Discharge Summary dated February 9, 1974; Gold Testimony)

16. The death certificate signed by Dr. Gordon Bendersky, one of Mr. Weiner's treating physicians, who saw him after the fall as well as on the date of death, listed the cause of death as ventricular fibrillation due to idiopathic cardiomyopathy. It contains no indication that death was related to an accident. (Rolling Hill Hospital Records, D–3A: Progress notes dated February 8, 1974, 5:30 p. m. and February 9, 1974; Death Certificate, D–8)

17. The statement of claim signed by plaintiff and submitted to defendant on April 30, 1975, stated as the cause of death: "a severe blow to the head aggravated idiopathic cardiomyopathy causing death." Accordingly, plaintiff herself has conceded that the insured's heart disease was a contributing cause of his death. (D–1)

18. Mr. Weiner's heart problems constituted a disease and were not a process or infirmity resulting from advancing age. (Gold Testimony; Aronson Testimony)

19. While Mr. Weiner sustained a ¼″ laceration on his head in a fall at Rolling Hill Hospital on February 8, 1974, it was not sufficient of itself to cause Mr. Weiner's death. (Rolling Hill Hospital Records, D–3A: Progress note dated February 8, 1974, 5:30 p. m.; Aronson Testimony)

20. The fall and the resulting laceration sustained by Mr. Weiner on February 8, 1974, acting in conjunction with a very serious pre-existing and substantial physical infirmity, caused his death. (Gold Testimony)

21. The injury sustained by Mr. Weiner as a result of his fall and cut on his head was not sufficient to cause his death if he had not suffered from serious heart disease. (Gold Testimony; Aronson Testimony)

22. Mr. Weiner's death was not caused solely by external, violent and accidental means as required by the policies. (P–1, page 14; P–2, pages 1–2; P–3, page 2; P–4, page 2; Gold Testimony; Aronson Testimony)

23. The beneficiary gave notice of the injury as required by the three accident policies within a reasonable time after their discovery. (Walsh Testimony)

24. Defendant insurance company having been notified of the insured's death in connection with the life insurance contract with a double indemnity clause and the claim for $120,000 for accidental benefits had an opportunity to make an investigation which would be equally applicable to the three accident policies.

25. Defendant insurance company sustained no prejudice as the result of the delayed notice with respect to the three accident policies.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties.

2. This court has jurisdiction over the subject matter since the citizenship of the parties is diverse and the amount in controversy exceeds $10,000 exclusive of interest and costs.

3. In order to recover "accidental death" benefits under any of the four policies of insurance at issue in this case, plaintiff had the burden of proving by a preponderance of the evidence that Leopold Weiner died solely as the direct result of an accident, and that no other cause, including a pre-existing heart disease, contributed in. any way to his death. *Real Estate Trust Company of Philadelphia v. Metropolitan Life Insurance Company*, 340 Pa. 533, 17 A.2d 416 (1941); *Rodia v. Metropolitan Life Insurance Company*, 354 Pa. 313, 47 A.2d 152 (1946); *Lucas v. Metropolitan Life Ins. Co.*, 339 Pa. 277, 14 A.2d 85 (1940); *Roeper v. Monarch Life Ins. Co.*, 138 Pa.Super. 283, 11 A.2d 184 (1940).

4. It is not sufficient that the fall may have been a cause of death. If Mr. Weiner's heart disease contributed to his death there can be no recovery. *Id.*

5. Since plaintiff's own evidence, as well as that of the defendant's medical expert, shows that Mr. Weiner probably would not have died as a result of his fall in the absence of his long continued heart disease which would have soon caused his death in the absence of the fall, plaintiff cannot recover under the terms of any of the four policies here involved.

6. Plaintiff's own evidence, as well as that of the defendant, establishes that Mr. Weiner's heart disease contributed to his death. Hence, plaintiff cannot recover under the terms and conditions of any of the four policies here involved.

7. Since plaintiff has failed to sustain her burden of proof, she cannot recover under the terms of any of the four policies in suit.

8. The duly certified copy of the death certificate of Leopold Weiner constitutes prima facie evidence of its contents, including the cause of death and the fact that no accident contributed to his death. Pa.Stat.Ann. Title 35 § 450.810; Rule 803(9), Federal Rules of Evidence.

9. Plaintiff submitted notice of the claims under the three accident policies

within a reasonable time after their discovery.

10. Defendant insurance company suffered no prejudice because of the delayed notice.

11. Defendant is entitled to a judgment in its favor and against the plaintiff on the basis of the law and the evidence as to the four policies here involved.